## Chicago, Burlington & Quincy Railroad Company v. John Suta.

### Gen. No. 4,560.

1. LEAVE TO AMEND—*is not ipso facto an amendment.*   Where no amendment is actually made pursuant to a leave granted to amend, the document sought to be amended remains unaffected.

2. AGENT—*who not, for purposes of service upon corporation.*   A person not hired or paid by a corporation and who is not subject to the orders of such corporation and who cannot be discharged by it and who performs no function in its behalf, is not such an agent as represents it for purposes of service of summons.

3. AGENT—*who not, for purposes of service upon corporation.*   The

agent of a lessee railroad corporation is not the agent of the lessor corporation for the purpose of summons upon the latter corporation.

4. AGENT—*who not, for purpose of service upon foreign corporation.* An agency relation may in some cases arise or be established as a legal result from the facts, although contrary to the avowed intention of the parties; but no such rule can have any application to cases where it is sought to reach foreign corporations by service on a local agent. Such agent must be one actually appointed by and representing the corporation as a matter of fact, not one created by construction or implication, contrary to the intention of the parties.

5. ASSESSMENT OF DAMAGES—*second jury not required.* Where an issue upon a plea of abatement is submitted to a jury for determination, such jury may, likewise, by the same verdict, assess the plaintiff's damages if it find the issues on the plea for the plaintiff.

Action on the case for personal injuries. Appeal from the City Court of Aurora; the Hon. JOHN L. HEALY, Judge, presiding. Heard in this court at the April term, 1905. Reversed and remanded. Opinion filed October 25, 1905.

ALBERT J. HOPKINS and ROBERT BRUCE SCOTT, for appellant.

GEMMILL & FOELL and GANNON & BURKHART, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.
On July 8, 1904, John Suta sued out a summons from the City Court of Aurora against the Chicago, Burlington and Quincy Railway Company (hereinafter called the railway company), returnable on the third Monday of September, 1904, in an action of trespass on the case, which summons was duly served and filed. On the same day plaintiff filed a declaration in said cause, charging that he was an employee of said railway company, as a laborer, and that, on July 11, 1902, while engaged in said employment, he was injured by reason of certain negligence of the defendant therein specified, in operating the railroad; and the purpose of the suit was to recover damages for the injury. On September 21, 1904, the railway company filed a petition in said court for the removal of said cause to the Circuit Court of the United States, which petition was accompanied by a bond as required by statute, and an affidavit of the sufficiency of the surety therein. On October

5th, plaintiff made a motion for leave to amend the pleadings and process in said cause by striking out the word "Railway" wherever it appeared as the name of the defendant, and substituting the word "Railroad" so as to make the title of said cause, John Suta v. Chicago, Burlington & Quincy Railroad Company. The latter will hereinafter be called the railroad company. On November 18, 1904, without any action having been taken by the court either upon said petition for removal or said motion for leave to amend, plaintiff sued out a summons against the Chicago, Burlington & Quincy Railroad Company in an action of trespass on the case, returnable on the first Monday of December following, which writ was thereafter filed with the following return of service thereon, signed by a deputy sheriff of Kane County, to wit: "Served this writ on the within named Chicago, Burlington & Quincy Railroad Company this 21st day of November, 1904, by leaving a copy thereof with H. C. Mulroy, Clerk for W. B. Throop, the President not being found in this county." This return was insufficient, as it was not therein stated that Throop had any connection whatever with the railroad company. During the trial hereinafter referred to, plaintiff obtained leave to have said return amended by showing service on the railroad company by leaving a copy with an agent of the railway company and clerk for Throop, its superintendent. No such amendment, however, was in fact made. Until an amendment is made the document remains the same as if no leave to amend had been given. Wisconsin Central R. R. Co. v. Wieczorek, 151 Ill. 579; Landt v. McCullough, 206 Ill. 214. On November 26th, the court denied the petition to remove the cause to the United States Circuit Court and granted the motion for leave to amend the declaration. The original summons and the original declaration were not in fact amended, but on that day plaintiff filed a new declaration solely against the railroad company, and although the summons against the railroad company was not returnable until the first Monday of December, the court at that time, on November 26th, entered

a rule on the defendant to plead by December 5th. On December 5th, the railroad company filed a plea in abatement. Thereafter plaintiff filed a replication thereto, and a jury trial was had, resulting in a verdict against the defendant on the plea in abatement and assessing the plaintiff's damages. Motions for a new trial and in arrest of judgment were denied, and plaintiff had judgment. The railroad company prosecutes this appeal.

Before the court had taken any action either upon the petition for the removal of the cause or upon the motion for leave to amend the pleadings and process, plaintiff had sued out a new summons wherein he was made plaintiff and the railroad company was made defendant, and had caused service of that summons to be made. That summons bore no apparent relation to the suit then pending before the court against the railway company. It was not entitled in that cause. Thereafter plaintiff filed a declaration corresponding to this new summons and containing nothing to indicate that it was a part of the suit then pending against the railway company. We conclude it is proper to treat the issue of the summons against the railroad company, which was done before any action by the court, and without any leave of court, as the commencement of a new suit, and the new declaration as filed in that suit. This, then, became a suit against the railroad company, although the manner of its commencement was irregular as it was obviously intended to give it a relation to the then pending suit. We think the practical result of what was done was that thereby a new suit was started. Whether, therefore, the original suit against the railway company is still pending in the state court, or is constructively in the United States Circuit Court, or has been abandoned by the course pursued, is a matter we consider it unnecessary for us to determine.

In the suit against the railroad company the plea to the jurisdiction of the court attacked the service of the summons against it, and averred that the railroad company had not, at the time of said attempted service of process on it, any office or place of business in said city of Aurora, in Kane

County, and did not then reside, and has not since resided, in said city, and was not served with process in this cause therein; that at said date and at the time of said attempted service of process it was the owner of a railroad extending through said city and county and other counties in the State of Illinois, and that it had, prior to the date and time of said attempted service, leased said railroad to the railway company, a corporation existing under and by virtue of the laws of the State of Iowa, and having its principal office in the State of Iowa, which railway company at the time of said attempted service on the railroad company was in possession of and operating said railroad as lessee thereof, and that the railroad company at the date and time of said attempted service of process upon it did not have possession of said railroad, and was not then operating the same; that at the time of the commencement of this suit, and prior thereto, and since, said railroad company resided and still resides in the city of Chicago, in the county of Cook and State of Illinois; that at the time of said supposed service of process alleged in said return to said summons, neither said Mulroy, clerk for said Throop, nor said Throop mentioned in said return, was the agent of said railroad company, nor were they or either of them on said date and at the time of said attempted service, the president, clerk, secretary, superintendent, agent, cashier, principal, director, engineer, conductor, station agent or any agent of the said railroad company; that said Throop was then the division superintendent of said railway company, lessee as aforesaid, and said Mulroy was at that time a clerk in the office of said Throop; that neither the president, clerk, secretary, superintendent, agent, cashier, principal, director, engineer, conductor, station agent, or any agent, employee or officer whatever of it, the said railroad company, was served with any summons or writ in the above entitled cause at any time, or is or was found in the said city of Aurora on the day of said alleged service. To this plea plaintiff replied that defendant, long before the time of the issuing of said writ, was and still is a resident

of the city of Aurora in Kane County, and at the time of the
issuance of said writ had, and still has, agents in said city
of Aurora engaged in and about the business of the de-
fendant, and that at the time of the service of said summons
referred to in said plea said Mulroy and said Throop were
agents of said defendant, and were duly and properly served
with process as such agents of the defendant.

The proof showed that the railroad company owned the
road and that on November 20, 1901, it leased the same
to the railway company and delivered possession thereof
to said company, and that the railway company exclusively
thereafter operated the road in its own name; that the
railroad company had an office and officers in Chicago,
but had no officers or employees or agents in Kane County,
and that Mulroy, upon whom the writ was served, had
never been an employee of the railroad company, but had
entered the employ of the railway company long after
the railway company began operating said railroad. At
the close of the evidence the court denied a motion to in-
struct the jury to find for the defendant, and instructed
the jury at the request of the plaintiff, that if the jury
found from the evidence that the railroad company had
leased all its property to the railway company, and that
the latter company was operating the railroad under said
lease and was so doing at the time of the injury to the
plaintiff, then the act of the Iowa corporation was like-
wise the act of the Illinois corporation, and that if Mulroy
was the agent of the Iowa corporation at the date of the
service of the writ, then he was also the agent of the Illi-
nois corporation. The jury thereupon found the issues
joined on the plea of abatement and replication for the
plaintiff, and found that Mulroy was the agent of the rail-
road company, and as such was served with the summons
in said cause, and found the defendant guilty and assessed
plaintiff's damages. The state of the proof was such that
the jury could not have found Mulroy, the agent of the
railroad company, for the purpose of service of process,
except upon the theory that all agents of a lessee company

who, under the law, are the agents of the lessee company for the purpose of service, are also by reason of that relation agents of the lessor company for the purpose of service upon the latter.

It is well settled that in this state the lessor and the lessee of a railway track are jointly and severally liable to the general public for all damages resulting from the negligent or wrongful acts of the lessee while operating engines and cars on that track; or, as expressed in Pennsylvania Co. v. Ellett, 132 Ill. 654, "that the grant of a franchise giving the right to build, own and operate a railway, carries with it the duty to so use the property and manage and control the railroad as to do no unnecessary damage to the person or property of others; and where injury results from the negligent or unlawful operation of the railroad, whether by the corporation to which the franchise is granted or by another corporation, or by individuals whom the owner authorizes or permits to use its tracks, the company owning the railway and franchise will be liable." This doctrine seems to have first been announced in this state at a time when the legislature had not authorized the leasing of railways, but any doubts whether the lessor would be held liable after a lease made pursuant to our present statute authorizing railway companies to lease their roads, seem to be solved in favor of the liability by the cases of Balsley v. St. L. A. & T. H. R. R. Co., 119 Ill. 68, and C. & G. T. Ry. Co. v. Hart, 209 Ill. 414, unless the statute permitting the lease expressly relieves the lessor from such liability, and our statute does not do that. The case last cited also extends such liability so as to make the lessor liable to employees of the lessee injured by the negligent operation of the road by the lessee.

To bring the defendant company into court it was necessary it should be served with summons in the manner provided by statute. That provision is made by section 4 of the Practice Act, as follows: "An incorporated company may be served with process by leaving a copy thereof with its president if he can be found in the county in which

the suit is brought; if he shall not be found in the county, then by leaving a copy of the process with any clerk, secretary, superintendent, general agent, cashier, principal, director, engineer, conductor, station agent or any agent of said company found in the county, and in case the proper officer shall make return upon such process that he cannot in his county find any clerk, secretary, superintendent, general agent, cashier, principal, director, engineer, conductor, station agent or any other agent of said company, then such company may be notified by publication and mail in like manner and with like effect, as is provided in sections twelve (12) and thirteen (13) of an act entitled 'An act to regulate the practice in courts of chancery,' approved March 15, 1872." Anderson's Law Dictionary defines an agent as "a person employed by another to act for him." Mulroy, upon whom this service was attempted, was not a clerk or agent of defendant in any ordinary sense of those words. It did not hire or pay him. It did not give him directions. It had no control over him. It could not discharge him. He made no reports to it. He owed it no duty to transmit to it the copy of the summons. It never had any communication with him, and nothing gave it any right to communicate with him or to expect any communication from him. But reliance was had upon language used by the Supreme Court in certain cases. In the Ellett case, *supra*, the court said: "The public may look for indemnity for injury resulting from the wrongful or unlawful operation of the road, to that corporation to which they have granted the franchise, and thus delegated a portion of the public service; *and for this purpose* the company whom it permits to use its tracks, and its servants and employees, will be regarded as the servants and agents of the owner company."

In Anderson v. West Chicago St. R. R. Co., 200 Ill. 329, the court said: "When injury results from the negligent or unlawful operation of a railroad, whether by the corporation to which the franchise is granted or by another corporation or other corporations which the proprietary com-

pany authorizes or permits to use its tracks, the company owning the railway tracks and franchise will be liable, *and for this purpose* the company whom it permits to use its tracks, and its servants and employees, will be regarded as the servants and agents of the owner company, and no other negligence than that of the lessee need be alleged or proved to fix the liability of the owner." The court then goes on to explain that by this is meant that the negligence or tort of the lessee is by law imputed to the lessor, because the latter cannot absolve itself from the responsibility imposed by law so to operate its road as to do no unnecessary damage to the person or property of others; and that the relation between the lessor and lessee, so far as it has reference to such damage, is not that of landlord and tenant, but of principal and agent or master and servant.

In the Hart case, *supra*, the court said: "Though a railroad company may, by lease or otherwise, entrust the execution of its chartered powers and duties to a lessee company, this court has expressed the view that the lessee company, while engaged in exercising such chartered privileges or chartered powers of the railroad company, is to be regarded as the servant or agent of the lessor company." In still other language in this case last cited the lessee is treated as the agent or servant of the lessor in performing the chartered powers of the lessor, and it is held that public policy demands that a corporation to which the state has granted special powers and privileges shall be charged with the duty to see that such privileges and powers are properly exercised. In view of the qualifying words used in these cases, we think the court did not mean to say that the servants of the lessee are the servants of the lessor for all purposes or generally. A fiction of the law cannot make those servants who are not servants in fact. What is meant, we take it, is that the lessor is to be liable for the negligence and torts of the servants of the lessee the same as if they were the servants of the lessor, or that, for the purpose of determining whether the lessor is liable in a given case of injury occurring in the operation of the road,

if the servants of the lessee have caused the injury by their negligence or wilful act, they are to be considered as the servants of the lessor, or their negligence or wilful act is to be imputed to the lessor as if they had been its servants. But they are treated as servants of the lessor only in this restricted sense and for this qualified purpose.

But it does not follow that they are also to be treated as agents of the lessor for the purpose of receiving service of summons against the lessor. To so hold, would be to greatly change the natural meaning of the language of section 4 of the Practice Act already quoted. It would also lead to singular results. It would not be contended that the lessor is liable for all debts and obligations of the lessee, but only for the negligence and wrongful acts of the lessee in the operation of the road under the franchise granted to the lessor. Cases might readily arise where the lessee would be liable to suit and the lessor would not be liable. As to such a matter certainly the employees of the lessee are not in any sense agents of the lessor. Suppose the lessee buys a locomotive or a thousand tons of coal and fails to pay therefor, and the seller should desire to contend that the lessor is liable. Or suppose the lessor after leasing the road, should transact some business not connected with the operation of the road, but connected perhaps with its stock or bonds, out of which a party should conceive he had a cause of action against the lessor. If in such cases, and others easily supposed, suit should be brought against the lessor, it seems to us too obvious for argument that the summons could not be effectually served upon a clerk or employee of the lessee. If, then, summons against the lessor can ever be effectively served upon the agents of the lessee, we should have the strange situation that the question whether service upon an agent of the lessee is good service upon the lessor would depend upon what the cause of action happened to be for which the suit was brought, and it would be necessary to see the declaration and perhaps to try the case before the court could determine whether defendant had been legally summoned.

Moreover, it might chance that the service would be good as to the cause of action stated in one count of the declaration, and void as to the cause of action stated in another. Such unreasonable results ought not to arise from the simple language of section 4 of the Practice Act. We are of opinion that when it says an incorporated company may be served with process by leaving a copy thereof with any clerk of said company, it means a clerk of the company in the usual sense of that term,—one hired by the company to do clerical work for it,—one subject to its orders and under its pay and control. On this question we think the true rule applicable to a domestic as well as a foreign corporation, is stated in U. S. v. Am. Bell Telephone Co., 29 Fed. 17, as follows: " An agency relation may in some cases arise or be established as a legal result from the facts, although contrary to the avowed intention of the parties; but no such rule can have any application to cases where it is sought to reach foreign corporations by service on a local agent. Such agent must be one actually appointed by and representing the corporation as a matter of fact, not one created by construction or implication, contrary to the intention of the parties." If the Illinois cases we have referred to be considered in their aspect as holding that for the purpose of protecting the public in the operation of the road the lessee is to be treated as the agent of the lessor in relation to its chartered duties, then it is to be remembered that in fact the servants of the lessee are only the agents of the agent of the lessor, even for that restricted purpose; and it was said in U. P. R. R. Co. v. Miller, 87 Ill. 45, that the legislature never designed that service of process upon an agent of an agent of a corporation should be sufficient to bring the corporation into court.

The case of Van Dresser v. Oregon Ry. & Nav. Co., 48. Fed. 202, partially sustains plaintiff's position. The Oregon company had leased its railway lines. It had no agent in the State of Washington, where the suit was brought, as the law required. The lease it had granted was without

authority of law, and was held binding only on the parties
to it. It was held that, because the state had not con-
sented to the transfer of the franchise, whoever, with de-
fendant's knowledge and consent, had the actual control of
its railway must be regarded as its authorized agent and
representative; that it was therefore doing business in the
state through the lessee as its authorized agent, and was
bound by service of process upon such agent. That differs
somewhat from the present case, for the lease in the case
before us was authorized by the state, and is binding, and
the lessor here has officers and agents in this state upon
whom service can be had, and provision is also made by
statute for another form of service. The only authority
relied upon by the court in the Dresser case, *supra*, is
Thomas v. Placerville G. Q. M. Co., 65 Cal. 600, and that
case contains no such doctrine. There the defendant was an
English corporation. Service was had upon one who was
conceded to be its "managing agent," and service upon the
managing agent of a non-resident corporation was author-
ized by the statute of the state. The service was not ques-
tioned, but the court incidentally remarked that the sum-
mons was properly served. The only litigated question
was whether the trial court erred in denying defendant's
motion to change the place of trial, upon a certain showing
made.

Alderson on Judicial Writs, 194, says service of summons
on the lessee is valid service on the lessor corporation, but
the only authority it cites for that statement is the Van
Dresser case. Similar language is used in 19 Ency. of
Pleading and Practice, 693, but its authority is the Van
Dresser case, and two cases cited from Georgia. An ex-
amination of these cases and other Georgia cases shows
that some of these cases relate to a railway company which
had put its road in charge of others, but it contributed a
certain per cent. of the operating expenses, and received
the same per cent. of the net earnings, and service on the
agent of those operating the road under that contract was
held good. In those cases the defendant was in a very

proper sense operating the road through those with whom
it so contracted.   It also appears that in that state there
is a statute enacting how service may be had upon a lessor
railway company.   We have patiently examined the many
other cases relied upon by plaintiff, and think them not
applicable.   In some the question of service was not in-
volved, but only the liability of the lessor for the torts of
the lessee in operating the road, or the liability of a   cor-
poration which 'had organized a sub-corporation as a sort
of dummy apparently to accept responsibility for acts
really directed and performed by the parent company.   In
others it was held that one selling tickets or soliciting or
obtaining freight or passenger business for a non-resident
railroad company, was its agent for the purpose of service
under special statutes there construed or applied.   Others
relate to the state in which the suit should be brought
under statutes there discussed.   It would unnecessarily ex-.
tend this opinion to review them here.   None of them seem
to us to tend to the conclusion that where a lease has been
made in good faith and not as a mere sham, summons against
a lessor may be served upon an agent of its lessee corpora-
tion, except the Van Dresser case, *supra*.   We conclude
that case is not in harmony with the general current of
authority.   It follows that in our opinion the jury should
have found for defendant the issues formed upon the rep-
lication to the plea.

It is not necessary to resort to a strained construction of
the statute to avoid the chance that a lessor in such case
may be able to escape service.   Section 2 of the Practice
Act, after enacting that it shall not be lawful for any
plaintiff to sue any defendant out of the county where
the latter resides or may be found, also contains the follow-
ing:   "Actions against a railroad or bridge company may
be brought in the county where the principal office is lo-
cated, or in the county where the cause of action accrued,
or in any county into or through which its road or bridge
may run."   Section 4, already quoted, provides for service
upon a corporation by publication, if no proper officer or

agent thereof can be found in the county where the suit is brought.

The court below permitted plaintiff to prove his damages. It is argued that while the damages should be proven on the trial of a plea in abatement in an action of debt, or for the recovery of a specific article of property, yet where the damages are unliquidated, either in assumpsit or tort, they cannot be assessed by the jury which tries the issue upon the plea in abatement. It was so held in Steele v. Grand Trunk Junction Ry. Co., 20 Ill. App. 366, and is so laid down in Tidd's Practice, 740. But we understand the rule and practice in this state to be that pursued in this respect by the court below. The Supreme Court in Italian-Swiss Agricultural Colony v. Pease, 194 Ill. 98, said: "It has been uniformly held *in all cases at law* in which the question has arisen in this jurisdiction, that when an issue of fact is thus submitted to a jury for decision on a mere issue of the abatement of the writ, the effect is that the defendant admits the merits of the plaintiff's claim, and if the issue of fact in abatement is decided for the plaintiff, the jury, by the same verdict, should assess the damages of the plaintiff."

For the reasons above stated the judgment of the court below is reversed and the cause remanded for further proceedings in conformity with this opinion.

*Reversed and remanded.*