ARTHUR SLATES, Plaintiff-Appellant, v. INTERNATIONAL HOUSE OF PANCAKES, INC., Defendant-Appellee.

Fourth District   No. 16182

Opinion filed November 21, 1980.

718

Robert Auler, of Auler Law Offices, of Urbana, and Dennis A. Rendleman and Susan Rundquist, both law students, for appellant.

Arnold Blockman, of Hatch, Blockman & McPheters, of Champaign, for appellee.

Mr. PRESIDING JUSTICE MILLS delivered the opinion of the court:

We deal here with a question of service of process upon a foreign corporation. And with subaltern inquiries of agency and franchises.

On February 15, 1979, a default judgment was entered against the defendant, International House of Pancakes, a California corporation (IHOP-Cal). On February 20, 1980, the trial court entered an order quashing the service of process upon the defendant, sustaining defendant's objections to the jurisdiction of the court to enter a default judgment and vacating the default order and written judgment. Plaintiff now appeals, asserting that service of process was properly made upon the defendant corporation.

We affirm. But first, a brief recitation of the facts.

Plaintiff commenced this action by filing a complaint on February 21, 1978. Count I of the complaint alleged that defendant negligently, through a waitress, spilled scalding water upon plaintiff's lap, thereby inflicting severe injuries. The second count asserted that the defendant negligently employed the waitress. Two days later, a deputy sheriff

served a summons upon Randy Kurtz. The summons was issued for "International House of Pancakes, Inc., 308 East Green, Champaign, Illinois" (IHOP-Champaign).

Almost one year later—February 15, 1979—the trial court entered a default judgment in favor of the plaintiff, the defendant having failed to appear. A jury trial, solely on the issue of damages, resulted in an award to the plaintiff of $90,000.

On March 16, 1979, a citation to discover assets was filed upon "International House of Pancakes, Inc., c/o C.T. Corporation Systems, Inc., 208 S. LaSalle Street, Chicago, Illinois 60604 registered agent."

Twelve days later, defendant filed a special and limited appearance to quash the return of service, object to jurisdiction and vacate the default judgment. The motion alleged that on the date of service, Randy Kurtz was an employee of Champaign Restaurants Limited (CRL) and not IHOP-Cal. The motion asserted that CRL was a "franchisee" of IHOP-Cal and that Kurtz was not paid, supervised, controlled or directed by defendant. IHOP-Cal claimed it was not aware of the suit until March 20, 1979, when the citation was forwarded from its registered agent.

Discovery depositions were taken, affidavits were submitted and the parties briefed the issues.

The affidavit of Donald Goodwin, President of CRL, an Illinois corporation, stated that on February 23, 1978, IHOP-Champaign was owned and operated by CRL pursuant to a franchise agreement. Goodwin further stated that on that date, Kurtz was an employee of CRL and not IHOP-Cal. CRL had never been an agent, partner, or joint venturer of IHOP-Cal.

William Richards, Regional Operations Director of IHOP-Cal, also stated that Kurtz was not an employee or agent of IHOP-Cal and was not authorized to accept service of process on behalf of defendant. He stated that defendant did not employ, direct the activities of, or pay the salary of Kurtz. Defendant was in the business of selling franchises for the operation of restaurants. Defendant has never owned or operated the restaurant in question, and IHOP-Cal's only relationship to IHOP-Champaign has been as a licensed owner of the name, International House of Pancakes, and certain trademarks and trade secrets, sublessor of the premises where the restaurant is located, and lessor of certain equipment used in the restaurant.

In his deposition, Richards stated that franchisees were given operator manuals as guides to the IHOP system but legally IHOP-Cal had no grounds to enforce them. He stated that franchisees take a six-week course which includes such things as cost control, food inventory and ordering, learning how to prepare food, backup procedures, etc.

Richards also stated that a coordinator would inspect the premises, the exterior, the lighting, the condition of the property, observe how the food came out of the kitchen area, watch the waitresses carry dishes, etc. The franchisor very seldom tried to legally enforce the franchise agreement because "every time we go to court against a franchisee we predominantly lose." The only recent litigation has been in the area of non-payment of rent. Richards had heard of litigation in Los Angeles attempting to have vending machines removed from IHOP's, but IHOP-Cal lost the case.

Richards stated that on his visits to the franchises, he would only talk to a manager if he had specific permission to do so from the franchisee. Richards stated that if he ran across a problem which he felt was serious and repeatedly occurred, he would ask an operations director or the regional director to view the problem. Richards stated that each franchise was supposed to have its own insurance and that normally the franchisor's legal department did not defend the franchise or give any instructions concerning pending law suits. Richards stated that the franchisees were never instructed to inform the defendant corporation in case of an accident or claim and that the defendant was not aware that plaintiff had been injured prior to the time of trial.

On cross-examination, Richards stated that in February of 1978 it was a policy of IHOP-Cal to place stickers in prominent places in the franchise store indicating the store was operated by a franchisee and that he was not an agent of the defendant corporation. Richards further stated that IHOP-Cal did not have the right to hire or fire employees of CRL. To the best of the witness' knowledge, defendant did not have any interest in CRL nor could it dictate the prices charged by the local franchisee.

David Holmes, associate general counsel for IHOP-Cal, stated in his affidavit that he was responsible for supervision of all litigation involving IHOP-Cal. He stated that he was not aware of the existence of the instant suit until March 20, 1979, when he received .information from the registered agent that the company had been served a citation.

Randy Kurtz stated that he was not served on February 23, 1978, with the complaint and summons in the instant case nor has he ever been served with such complaint and summons. The complaint and summons were not left with any employee under him. He stated that his first knowledge of the instant suit was in early 1979 when he was informed of the default judgment. If he had received the complaint and summons, it would have been his normal operating procedure to refuse to accept service on behalf of defendant corporation and to have immediately contacted his employer, Donald Goodwin. He stated that on February 23,

1978, he was supervised, directed and controlled by Donald Goodwin of CRL and was not supervised, directed or controlled by the defendant corporation. He stated he was not an employee or agent of IHOP-Cal.

Jay Streid, a deputy sheriff for Champaign County, stated in his affidavit that on February 23, 1978, he took a summons with the attached complaint to International House of Pancakes in Urbana, Illinois. He stated that a white male identified himself as Randy Kurtz, the manager, and Streid informed him that the summons and complaint were to be served upon International House of Pancakes. Streid stated that Kurtz then took the summons and complaint, indicating that he would accept such service, and observed Kurtz write his own name in his records under the heading Registered Agent, Officer or Agent.

Robert Martin stated that he was the recorder of deeds for Champaign County and that he searched the records of Champaign County and found no record of anyone filing under the corporations International House of Pancakes, Inc., or International House of Pancakes, or Champaign Restaurants Limited.

The franchise agreement was also attached in its entirety as an exhibit to the defendant's motion. Of particular significance to the trial court was the portion of the agreement which provided:

"RELATIONSHIP OF THE PARTIES.

A. In all matters pertaining to the operation of the franchised restaurant, Franchisee and Franchisor are and shall be independent contractors. Neither is the employee or employer of the other and none of the employees of the Franchisor or the Franchisee are the employees of the other. Nothing in this Agreement or in the relationship of the parties shall be construed to create a partnership, joint venture or agency between Franchisor and Franchisee. Subject to the requirement that Franchisee observe and perform all of the provisions of this Agreement, Lease and Equipment Lease and the Standard Operating Procedures of Franchisor in respect to the operation of the franchised restaurant, Franchisee shall have the right to operate said restaurant in such manner as it be determined by the Franchisee. Neither Franchisor nor Franchisee is or shall be responsible for debts of the other, absent the existence of a guarantee by the Franchisor pursuant to the terms and limitations of Article III hereof, or any other express written agreement between Franchisor and Franchisee."

In its order of February 20, 1980, the trial court found that Randy Kurtz was actually served by the sheriff and that CRL was not an agent of IHOP-Cal, so that service upon Kurtz was improper.

APPEALABILITY

■■ Before addressing the merits of this appeal, a short pause is in order to address an additional question. It is well settled that an appellate court in Illinois has the duty to inquire into its own jurisdiction. (*Sizer v. Lotus Grain & Coal Co.* (1979), 70 Ill. App. 3d 739, 388 N.E.2d 1274; *English v. English* (1979), 72 Ill. App. 3d 736, 393 N.E.2d 18.) In determining whether we have jurisdiction, our initial quest is to decide whether we have a final and appealable order. If not, we then look to see whether the instant order is within the parameters of our Supreme Court Rules providing for appeals from less than final orders.

■■ Supreme Court Rule 301 (73 Ill. 2d R. 301) provides that every final judgment of a circuit court in a civil case is appealable as a right. A final judgment is one which conclusively adjudicates the rights of the parties; where the only act remaining is execution. See *Deckard v. Joiner* (1970), 44 Ill. 2d 412, 255 N.E.2d 900, *cert. denied* (1970), 400 U.S. 941, 27 L. Ed. 2d 244, 91 S. Ct. 232; *Mexicali Club, Inc. v. Illinois Liquor Control Com.* (1976), 37 Ill. App. 3d 797, 347 N.E.2d 190.

■■ We find that the order which plaintiff is appealing was not a final order under Rule 301. The order quashing service of process and vacating the default does not ultimately determine the rights of the parties. At this point, there is still a complaint on file in the circuit court which has not, in effect, been served on the named defendant. Additionally, there is no evidence that plaintiff could serve process only through Kurtz. In fact, the record belies this conclusion. There is evidence here that defendant corporation is doing business in Illinois and maintains a registered agent. Clearly this order was not final.

By provisions of the Illinois Constitution of 1970, our supreme court was given the authority to provide for appeals from less than final judgments. (Ill. Const. 1970, art. VI, §6.) In the civil arena, Supreme Court Rule 304 (73 Ill. 2d R. 304) defines situations where interlocutory, or nonfinal, orders may be appealed. Since we have no express finding by the trial court, the only portion of Rule 304 which could be applicable to this case is subsection (b)(3), which provides that orders granting or denying relief requested under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72) are appealable orders. Our resolution of the appealability question thus turns on whether the defendant's motion to quash service of process and vacate the default judgment can properly be considered as a motion under section 72.

In *Hunt v. General Improvements, Inc.* (1977), 48 Ill. App. 3d 421, 362 N.E.2d 1143, this court declared that a section 72 petition to vacate a default judgment invokes the equitable powers of the court, as justice and fairness require, to the end that one may not enforce a default judgment attended by unfair, unjust or unconscionable circumstances. While we

did not squarely address the question of whether a section 72 is a proper vehicle to attack a default judgment, the opinion clearly takes the position that such a procedure is proper. See also *Island Terrace Apartments v. Keystone Service Co.* (1975), 35 Ill. App. 3d 95, 341 N.E.2d 41; *Aetna Casualty & Surety Co. v. Sanders* (1973), 15 Ill. App. 3d 573, 305 N.E.2d 25; but see *Harris v. American Legion John T. Shelton Post No. 838* (1973), 12 Ill. App. 3d 235, 297 N.E.2d 795; *Mason v. Freeman National Printing Equipment Co.* (1977), 51 Ill. App. 3d 581, 366 N.E.2d 1015.

■■ Consistent with our previous decision in *Hunt*, we hold that a section 72 petition is a proper method of attacking a default judgment when the provisions of that section have been followed. As such, the order in the instant case is appealable as one granting relief under a section 72 petition. We reach this conclusion with an awareness that section 72(6) provides:

"(6) Nothing contained in this Section affects any existing right to relief from a void order or judgment, or to employ any existing method to procure that relief." (Ill. Rev. Stat. 1979, ch. 110, par. 72(6).)

We do not read this section, as some courts have, as removing motions attacking a void judgment from the ambit of section 72. (See *Mason.*) Rather, we read section 72(6) as a clarification that section 72 provides a parallel mode for contesting void judgments.

### SERVICE

■■ Now to the quintessence of the instant dispute. Section 111 of the Business Corporation Act of 1933 provides that process upon a foreign corporation may be had by service upon the registered agent or, in the absence thereof, upon the Secretary of State. (Ill. Rev. Stat. 1979, ch. 32, par. 157.111.) By its express language, however, this section does not limit the manner in which service is made. Thus, a foreign corporation may be served in the same manner as a domestic corporation. (See 1 Nichols, Illinois Civil Procedure §600, at 550 (1976).) Section 13.3 of the Civil Practice Act provides for service upon private corporations.

"A private corporation may be served (1) by leaving a copy of the process with its registered agent or any officer or agent of said corporation found anywhere in the State; or (2) in any other manner now or hereafter permitted by law. A private corporation may also be notified by publication and mail in like manner and with like effect as individuals." Ill. Rev. Stat. 1979, ch. 110, par. 13.3.

■■ Clearly, Kurtz was neither the registered agent nor an officer of defendant corporation. Therefore, the only way process could be sufficient in this case is if Kurtz was an agent of said corporation. Since the

status of agency is a legal conclusion based on facts which are typically extraneous to the serving officer's knowledge, the sheriff's return is not conclusive of the *fact of agency*, although it leads to a presumption that the named person was served. (See *Harris v. American Legion John T. Shelton Post No. 838* (1973), 12 Ill. App. 3d 235, 297 N.E.2d 795.) Thus, the fact that the return in this case reflects a service upon Randy Kurtz as an agent of IHOP-Cal is not determinative.

■■ As we stated in *Hunt v. General Improvements, Inc.* (1977), 48 Ill. App. 3d 421, 362 N.E.2d 1143, a petition to vacate a default judgment is addressed to the sound discretion of the court. Therefore, a ruling on such a petition will be reversed only for a clear abuse of this discretion. We find no such abuse here. Although there appears to be some question as to which party had the burden of proof on the presence or absence of the agency relationship, we hold that the plaintiff, who chose to regard Kurtz as an agent, shouldered the burden of establishing the relationship. (Compare *Mineral Point R.R. Co. v. Keep* (1859), 22 Ill. 9, *Harris v. American Legion John T. Shelton Post No. 838* (1973), 12 Ill. App. 3d 235, 297 N.E.2d 795, and *Abelson v. Steffke Freight Co.* (1954), 1 Ill. App. 2d 461, 118 N.E.2d 26, with *Island Terrace Apartments v. Keystone Service Co.* (1975), 35 Ill. App. 3d 95, 341 N.E.2d 41, and *Millard v. Castle Baking Co.* (1959), 23 Ill. App. 2d 51, 161 N.E.2d 483.) The plaintiff here has failed to meet his burden.

Evidence presented to the trial court, which was largely undisputed, establishes that Kurtz was not paid, supervised, controlled or directed by the defendant corporation. Additionally, IHOP-Cal did not have the authority to hire or fire Kurtz. While Kurtz was admittedly an agent/employee of CRL, there was no evidence presented that he maintained such a relationship with IHOP-Cal.

Agency is a consensual, fiduciary relationship between two persons, created by law by which one, the principal, has a right to control the conduct of the agent, and the agent has a power to affect the legal relations of the principal. (Seavey, Law of Agency §3, at 3 (1964).) The agency relationship differs from other fiduciary relationships in that it is the duty of the agent to respond to the desires of the principal. Reuschlein, Agency and Partnership §5, at 11 (1979).

■■ The utter vacuity of evidence pertaining to the crucial element of control of Randy Kurtz by IHOP-Cal leads to the inescapable conclusion that there was no agency relationship.

■■ But wait. Plaintiff is not so easily turned back. He further argues that IHOP-Champaign and CRL are agents of IHOP-Cal so that service upon their agent, Randy Kurtz, is sufficient service upon IHOP-Cal. Plaintiff focuses upon the franchise agreement and the degree of control and direction exercised by IHOP-Cal over IHOP-Champaign and CRL. Even

assuming plaintiff could establish his agent-of-an-agent theory, he must fail for such service is inadequate in Illinois, at least when the employee of the agent has not been designated by the agent to receive process.

In *Mason v. Freeman National Printing Equipment Co*. (1977), 51 Ill. App. 3d 581, 366 N.E.2d 1015, the sheriff was directed to serve process upon defendant's registered agent. Instead, service was made upon an employee of that agent who had not been designated as an agent to receive process. An *ex parte* judgment was entered after defendant failed to appear. Defendant filed a petition to vacate which was denied because he failed to comply with section 72. The First District reversed and vacated the judgment. In so doing, the court declared that it is axiomatic that one of the essentials of a valid judgment is that the court have jurisdiction to render it, and that service of process on a defendant is a necessary and imperative element and prerequisite before the court can have jurisdiction to enter a judgment against the defendant. Pursuant to section 13.3 of the Civil Practice Act, a private corporation may be served by leaving a copy of the process with the corporation's registered agent or with an officer or agent of the corporation.

> "Nowhere does the statute provide that service can be had on an employee of the registered agent. * * * While the provision relating to service should be liberally construed, we must bear in mind that the enumeration of one method presumptively excludes other modes or methods not expressly mentioned in the statute. [Citation] The statute expressly provides for service upon an officer or agent of the corporation being sued. *It does not provide for service on an employee or agent of an agent; therefore, we must conclude the legislature did not intend for such service to suffice.*" (Emphasis added.) 51 Ill. App. 3d 581, 583-84, 366 N.E.2d 1015, 1017.

An application of *Mason* to the instant case reveals that service upon Kurtz as an agent of an agent was insufficient.

Even if we were to disagree with the holding in *Mason*, our result would be the same. We agree with the trial court that the plaintiff has failed to establish the necessary agency relationship between defendant IHOP-Cal and IHOP-Champaign.

■■ Where the facts indicate that one corporation so controls the affairs of another corporation that the two entities are essentially one, the court will disregard the corporate entities and hold service of process on one corporation effective as to the other. *Rymal v. Ulbeco, Inc.* (1975), 33 Ill. App. 3d 799, 338 N.E.2d 209.

■■ ■ The mere licensing of a trade name does not create an agency relationship, either ostensible or actual. Nevertheless, certain nationwide

businesses—certain franchises—are not independently owned but are owned by a single organization which operates by chains or branches. Where a sufficient degree of control and direction is manifested by the parent franchisor, an agency relationship may be created. Whether the relationship between a franchisor and a franchisee is that of principal and agent, at least insofar as this relationship affects a stranger to the franchise agreement, is dependent upon the intention of the parties as determined from the written agreement and the accompanying circumstances. The declaration of the parties in the agreement respecting the nature of the relationship created thereby are not controlling, however, and, as with contracts generally, the writings must be considered as a whole. 62 Am. Jur. 2d *Private Franchise Contracts* §15 (1972).

Although the private franchise agreement as a legal entity is still in its toddler stages, its foundations lie in certain longstanding principles. Thus, in *Cadillac Automobile Co. v. Boynton* (1908), 142 Ill. App. 381, *affirmed* (1909), 240 Ill. 171, 88 N.E. 564, the court was faced with a question remarkably similar to the one we address in this case. Boynton filed suit against Cadillac, and summons was served upon E. H. Cohoon. Judgment was entered in favor of Boynton for $1,125. Cadillac sought an injunction preventing execution, claiming that Cohoon was not its agent and that it had a meritorious defense. A preliminary injunction was issued and later dissolved. At the hearing it was admitted by Boynton that if Cohoon was an agent, it was only pursuant to a written agreement between Cohoon and Cadillac. As such, the court limited its consideration to the terms of the agreement. By the terms of the agreement, Cohoon was the "exclusive agent" for the sale of Cadillac in Northern DeKalb County. Cohoon agreed not to sell any autos outside the area and Cadillac agreed to advertise and promote the product. Cadillac set the price and Cohoon agreed not to sell any competitors' automobiles. In holding that an agency relationship existed, for purposes of service of summons, the Second District stated:

> "If the contract before us merely provided that appellant should sell Cadillac automobiles to Cohoon & Company and that the latter should buy them from appellant, and that Cohoon & Company should have the exclusive right to sell Cadillac automobiles within the territory named and during the period of time covered by the contract, and that Cohoon & Company should sell only at the prices fixed by appellant and should buy the machines at a certain discount from that price, no doubt such contract would not make Cohoon & Company agents for appellant upon whom summons against appellant could be served, but this contract contains far more than that." 142 Ill. App. 381, 390.

We look first to the franchise agreement involved in this case. The relevant portion has been quoted above and indicates beyond any doubt that the parties to the agreement were trying to exclude the possibility of an agency relationship. Courts do not, however, look only to the terms that the parties employ in the agreement to determine if an agency relationship exists, but rather look to the operative terms of the agreement. (See generally *Boynton*; *Board of Trade v. Hammond Elevator Co.* (1905), 198 U.S. 424, 49 L. Ed. 1111, 25 S. Ct. 740; *Nichols v. Arthur Murray, Inc.* (1967), 248 Cal. App. 2d 610, 56 Cal. Rptr. 728.) Plaintiff strenuously argues in this court that the franchise agreement grants the use of trademarks, trade names, insignia, labels or designs, trade secrets, formulas, process, methods of operation, and good will, subject to certain restrictions. Plaintiff notes that the agreement provides that the restaurant shall be named International House of Pancakes without any suffix or prefix attached thereto and will bear signs, advertising and slogans which denote that the store is named only International House of Pancakes. The agreement further provides that the restaurant may serve and sell only such items and products as shall be expressly from time to time designated and approved in writing by the defendant. The franchisee may purchase all flour and pancake mixes only from the franchisor or from suppliers approved in writing by the franchisor. The franchisor is specifically given the power to promulgate a standard operational procedures manual which will be binding upon the franchisee covering the following subjects: training and supervision of franchisees and restaurant managers, quality control, record keeping and account controls, administrative assistance, periodic inspections, appearance of the premises, hours of operation, merchandise sold, employees' appearance and demeanor, the personal standards in training, promotions, advertisings and signs, preparation and service of food and beverages, and relations with suppliers.

■■■ The trial court in the instant case specifically stated that it felt the amount of control exercised by IHOP-Cal was customary in a franchise agreement. The court was not pursuaded that IHOP-Cal exercised such control over IHOP-Champaign so as to make the latter an agent for service of process. While we agree with the plaintiff that the agreement gives the defendant a high degree of supervision over the methods and operations of IHOP-Champaign, our examination of the agreement indicates that this control was not so all encompassing as to negate the express intention of the parties in the franchise agreement that no agency relationship was created. The trial court did not abuse its discretion.

As a final grasp at the gold ring, plaintiff claims that Kurtz was an ostensible agent of IHOP-Cal because defendant vested Kurtz with apparent authority to receive service of process and thus IHOP-Cal is

estopped from denying the fact of agency. Plaintiff claims that the key case in this area is *Wood v. Holiday Inns, Inc.* (5th Cir. 1975), 508 F.2d 167.

In *Wood,* the plaintiff checked into a Holiday Inn in Alabama on February 1, 1972, and presented a Gulf Oil Credit Card for payment. A desk clerk later called National Data Corp., a company designed to disburse undetailed credit information by phone. National Data instructed the clerk to deny credit and to pick up the card for a reward. National Data had been mistakenly directed to do so by Gulf Oil. The clerk contacted the plaintiff and seized the card from him, commanding cash payment for the room. Plaintiff paid the bill and three days later suffered a heart attack while relating the incident to a friend. A jury verdict in favor of the plaintiff was set aside by the district court, and the Fifth Circuit found that the clerk was an ostensible agent of Gulf Oil when he seized the card. In so doing, the court applied what it characterized as the "opaque state of agency law in Alabama."

■■ We are not persuaded by plaintiff's argument or his authorities. We agree with the defendant that for service of process to be effectively made upon an agent of the defendant, such agent must have actual authority. While both parties have quoted the case of *Barnard v. Springfield & Northeastern Traction Co.* (1916), 274 Ill. 148, 113 N.E. 89, plaintiff has conveniently omitted the portion of that opinion which states:

> "For the purpose of service under said section of the statute such agent must be one actually appointed by the corporation and representing the corporation in some line of employment authorized by its charter, and not one created by implication or construction and contrary to the intention of the parties. [Citation.]" (274 Ill. 148, 151, 113 N.E. 89, 90.)

(See also *Chicago, Burlington & Quincy R.R. Co. v. Suta* (1905), 123 Ill. App. 125; but see *Combs v. Hamlin Wizard Oil Co.* (1895), 58 Ill. App. 123; *Italian-Swiss Agricultural Colony v. Pease* (1901), 194 Ill. 98, 62 N.E. 317.) The reason that apparent or ostensible agency is sufficient to bind the principal for purposes of contract but insufficient for purposes of service of process is that the latter concept involves fundamental principles of due process and must be so construed as to conform with principles of natural justice, so that the service will constitute due process of law. Annot., *Service of process upon agent of party by estoppel or implication of law,* 30 A.L.R. 176 (1924).

As a final point, we must indicate that we are perplexed by the fact that plaintiff served the *complaint and summons* upon the *manager* of IHOP-Champaign but served the citation to discover assets upon the *registered agent* of defendant corporation in Chicago. While there is clearly no evidence to indicate a violation of ethical principles or that

plaintiff was attempting to hide this litigation until after a default was entered, the preferable approach would have been to serve a copy of the summons and complaint upon the registered agent of the defendant foreign corporation. Furthermore, while section 13.3 does not indicate a preference for service upon a private corporation, prudence and the good practice of law clearly require that service be made upon the registered agent.

The decision of the trial court quashing service of process and vacating the default judgment is hereby affirmed.

Affirmed.

GREEN and WEBBER, JJ., concur.