QUAD-L, LTD., *et al.*, Plaintiffs-Appellants, v. TASTEE-FREEZ OF WEST CENTRAL ILLINOIS *et al.*, Defendants (Big T Corporation *et al.*, Defendants-Appellees).

Third District   No. 3—87—0741

Opinion filed September 16, 1988.—Rehearing denied November 2, 1988.

Coyle, Gilman & Stengel, of Rock Island (Francis J. Coyle, Jr., of counsel), for appellants.

Dennis R. Fox, of Calif, Harper, Fox, Dailey & Slover, of Moline (Roger L. Strandlund, of counsel), for appellees Big T Corporation and DeNovo Corporation.

Durward J. Long, Sr., of Long & Long, P.C., of Rock Island, for other appellees.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The plaintiffs, Quad-L, Ltd., a corporation (Quad-L), and Kim and Veron Lombardi, appeal from the decision of the circuit court which

granted the special appearances of Big T Corporation and DeNovo Corporation and found that Illinois did not have jurisdiction over Big T and DeNovo.

Big T Corporation (Big T), and DeNovo Corporation (DeNovo), are Michigan corporations with their principal offices in Michigan. Big T is a wholly owned subsidiary of DeNovo.

In 1982, Big T acquired the assets of International Service & Sales, Inc., a Missouri corporation. These assets included various trademarks and agreements licensing the use of those trademarks. Included in those agreements is one between the defendant, Tastee-Freez of West Central Illinois (Tastee-Freez), and Tastee-Freez International Services & Sales, Inc.

Kim and Veron Lombardi are officers of Quad-L, Ltd., a corporation with its principal office in Iowa. At some time prior to December 14, 1982, Quad-L received a franchise agreement entitled "Restaurant License Agreement" from Tastee-Freez with instructions to execute and return. The agreement identified Tastee-Freez as franchise holder, Quad-L as licensee, and Big T as franchiser.

Prior to executing the agreement, Big T and Tastee-Freez provided Quad-L with various circulars, alleged false profit and loss projections and earning claims in an effort to have Quad-L execute the agreement. On December 14, 1982, Quad-L executed the agreement and delivered it to Tastee-Freez for execution. The agreement was never executed by Tastee-Freez, Big T, or DeNovo.

Having executed the agreement, Quad-L paid Tastee-Freez the $5,000 franchise fee as required by the agreement. Once the restaurant opened, Tastee-Freez was paid additional fees as required by the agreement. The plaintiffs lost money as a result of the franchise agreement and have filed suit in Illinois against a number of parties, including DeNovo, Big T, and Tastee-Freez. Tastee-Freez has appeared in the cause and submitted to the jurisdiction of the Illinois courts. DeNovo and Big T filed special appearances in response to the complaint and the purported service of process on them. After hearing oral arguments and reviewing briefs, the trial court granted the special appearances. By written order entered on August 25, 1987, the court found that neither Big T nor DeNovo is doing business in Illinois nor have they transacted any business in Illinois. In addition the court stated that neither party committed a tort within the State of Illinois and thus is not subject to Illinois jurisdiction. The court felt that whatever business was conducted by DeNovo and Big T was conducted in Michigan concerning an Iowa business.

On appeal the plaintiff argues that the trial court erred in grant-

ing DeNovo's and Big T's special appearances. Specifically, the plaintiff argues the defendants are subject to Illinois jurisdiction under any of the following: (1) the doing of business in Illinois by Big T and DeNovo; (2) the provisions of the Illinois long arm statute (Ill. Rev. Stat. 1985, ch. 110, par. 2—209); and (3) the provisions of the Franchise Disclosure Act (Ill. Rev. Stat. 1985, ch. 121½, par. 701 *et seq.*) (repealed by Pub. Act 85—551, eff. Jan. 1, 1988) (now Ill. Rev. Stat. 1987, ch. 121½, par. 1701 *et seq.*).

In light of the view we take with regard to DeNovo and Big T doing business in Illinois it is unnecessary for the court to discuss whether the defendants would be subject to jurisdiction under the long arm statute or the Franchise Disclosure Act.

■ Under the "doing business doctrine," a nonresident corporation will be considered to have consented to being sued in Illinois if the nonresident corporation is doing business in Illinois. (*Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 429 N.E.2d 847; see also *Hertz Corp. v. Taylor* (1959), 15 Ill. 2d 552, 155 N.E.2d 610; *St. Louis-San Francisco Ry. Co. v. Gitchoff* (1977), 68 Ill. 2d 38, 369 N.E.2d 52; *Braband v. Beech Aircraft Corp.* (1978), 72 Ill. 2d 548, 382 N.E.2d 252 (where Illinois Supreme Court found corporations' activities to constitute doing business in Illinois).) Doing business for the purposes of jurisdiction has been defined as a corporation's operating within a State not occasionally or casually, but with a fair measure of performance and continuity. *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 429 N.E.2d 847.

■ The facts in the instant case show that Big T and DeNovo have sufficient contacts with the State of Illinois to be considered doing business in Illinois and thus subject to the jurisdiction of Illinois courts.

DeNovo and Big T Corporation have an agreement with Tastee-Freez of West Central Illinois (Tastee-Freez), whereby Tastee-Freez is authorized to subfranchise others to operate restaurants under Big T's trade name. In return Tastee-Freez obtained a fee for establishing new operations. Tastee-Freez would also collect a 1% royalty fee from the operations for DeNovo and then forward it to them. A number of facts included in the record that illustrate that DeNovo and Big T are doing business in Illinois come from the deposition of John R. Brooks. Mr. Brooks stated that he is a partner of Tastee-Freez of West Central Illinois and that he is the "franchise man" for DeNovo. Brooks pays a royalty of 1% of gross sales after tax to DeNovo. Pursuant to the above-mentioned agreement between Big T, DeNovo, and Tastee-Freez, Brooks is permitted to license Big T restaurant trademarks.

Brooks has sold five Big T restaurant franchises in Illinois. These franchises would conduct business in Illinois under the trade name of Big T restaurants. Each of the five franchises was required to pay a 1% royalty to DeNovo. Normally, the 1% payments would be sent to Tastee-Freez, which forwarded them to DeNovo.

The franchise offering circular is also relevant in determining whether DeNovo and Big T are doing business in Illinois. Included within the offering circular sent out by Big T and Tastee-Freez is a provision for the training of new prospective franchise personnel. This training is to take place in a Big T family restaurant facility located in Moline, Illinois. The training provision states that the facility is run by Tastee-Freez personnel but that the "sub-franchisor" does not maintain a formal training staff. Rather, the training is normally provided by Big T and DeNovo personnel. Another factor that illustrates that Big T and DeNovo are doing business in Illinois is that Big T has registered its trademark of "Big Tee" in Illinois and has approximately 55 franchises in Illinois.

The defendants argue that the depositions of Brooks, Kim Lombardi and David Chapoton illustrate that the defendants are not in fact operating in Illinois. The parties agree that the statements are consistent, and the defendants principally rely upon David Chapoton's statements. Chapoton, president of DeNovo and Big T, states that Big T Corporation has never had any relationship with Tastee-Freez or any of its partners, other than the performance of rights and duties associated with Tastee-Freez' right to license others to operate Big T restaurants. The defendants contend the agreement and the contacts which come with it are not enough to classify Big T and DeNovo as doing business in Illinois.

In support of their position the defendants principally rely on two cases. The first case is *Natural Gas Pipeline Co. of America v. Mobile Rocky Mountain, Inc.* (1986), 155 Ill. App. 3d 841, 508 N.E.2d 211. In *Natural Gas*, the parties entered into a natural gas purchase contract. The defendant was a nonresident corporation which was neither licensed to do business in Illinois, nor had any property or employees in Illinois. The gas contracted for was delivered outside of Illinois by the defendant and then the plaintiff arranged to have the gas transported into Illinois. As in the present case, the defendant acquired the contract through an assignment from a third party and the defendant received revenues paid by the plaintiff to the defendant. The plaintiff attempted to gain jurisdiction over the defendant by making an "economic relationship" argument similar to the argument the plaintiffs in the present case advance. In *Natural Gas*, the plain-

tiff argued that by performing a contract with an Illinois plaintiff, the nonresident corporation availed itself of the market for its products in Illinois.

The *Natural Gas* court held that the nonresident defendant did not do business in Illinois. The court stated that merely delivering gas to a forum plaintiff outside of Illinois to one contract the defendant has does not mean the defendant has purposefully availed itself of the market for its products in Illinois. *Natural Gas Pipeline Co. of America v. Mobile Rocky Mountain, Inc.* (1986), 155 Ill. App. 3d 841, 508 N.E.2d 211.

The facts in the present case differ from those in *Natural Gas*. DeNovo and Big T conduct business in Illinois through their franchise agreements with several Tastee-Freezes, including Tastee-Freez of West Central Illinois. In addition, the corporations authorized John Banks to negotiate franchise agreements. Examining the record it is clear that DeNovo and Big T have far more contacts with Illinois than the nonresident defendant did in *Natural Gas*.

The second case the defendant corporations rely upon is *Slates v. International House of Pancakes, Inc.* (1980), 90 Ill. App. 3d 716, 413 N.E.2d 457. In *Slates* the plaintiff filed an action against the franchiser of a restaurant, a foreign corporation, when an employee of the franchisee injured the plaintiff. The plaintiff sought service of the franchiser by serving the franchisee's manager, arguing that the manager was an agent for the franchiser. The court held that the mere licensing of a trade name does not create an agency relationship. *Slates v. International House of Pancakes, Inc.* (1980), 90 Ill. App. 3d 716, 413 N.E.2d 457.

In the present case, the defendants argue that their contract with Tastee-Freez, which is authorized to do business on behalf of DeNovo and Big T, does not create a relationship with Illinois sufficient to confer jurisdiction. This court disagrees with the defendants' argument. In addition to the above-mentioned contacts, Tastee-Freez through John Brooks is authorized to market DeNovo's and Big T's trademarks and trade names. Tastee-Freez, as a subfranchiser, is encouraged to sell the defendants' franchises. The franchises are sold for Tastee-Freez' benefit as well as DeNovo's and Big T's, which receive royalty fees from each individual franchise. Certainly, the scenario in the present case differs from the *Slates* case, where the plaintiffs sought to obtain jurisdiction over a nonresident corporation franchiser by serving the franchisee's manager. In the present case, the plaintiffs correctly allege that DeNovo and Big T are transacting business in Illinois through Tastee-Freez, which has a contract with the defend-

ants to market their franchises.

As a final conclusion, it is evident that by conducting business within Illinois DeNovo and Big T have subjected themselves to jurisdiction of the Illinois courts, and, thus, are subject to service pursuant to the Illinois Code of Civil Procedure. Ill. Rev. Stat. 1985, ch. 110, par. 2—208.

For the foregoing reasons the judgment of the circuit court of Rock Island County is reversed and remanded for further proceedings.

Reversed and remanded.

HEIPLE and SCOTT, JJ., concur.