SAMANTHA ANDERSON, a Minor, By and Through Her Mother and Next Friend, Deborah Anderson, *et al.*, Plaintiffs-Appellants, v. BOY SCOUTS OF AMERICA, INC., *et al.*, Defendants-Appellees (Greenbrook Parent Teacher Organization, Defendants).

First District (5th Division)   Nos. 1—90—2603, 1—91—1568 cons.

Opinion filed March 6, 1992.

John B. Schwartz and Stephen J. Caron, both of Schwartz & Rubin, of Chicago, for appellants.

Dana C. Crowley, of Bullaro, Carton & Stone, of Chicago, for appellees.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiffs Samantha Anderson and her parents, Terrance and Deborah Anderson (the Andersons), appeal from two separate circuit court orders, one granting summary judgment in favor of the Du Page Area Council of Boy Scouts of America, Inc. (Du Page Area Council or Council), and the other granting summary judgment in favor of the national organization, Boy Scouts of America, Inc. (BSA), in a negligence action brought by the Andersons. We consolidated the appeals for review and now affirm the orders of the circuit court.

According to plaintiffs' complaint, as amended on June 21, 1990, Samantha Anderson, age 14 months, was injured on November, 26, 1988, when Daniel R. Searle (Searle) struck her with his car as he backed out of a driveway at a residence in Hanover Park, Illinois. Plaintiffs further alleged that at the time of the accident Searle was a webelos[1] leader for Cub Scout Pack No. 421, Den No. 4, a scouting unit formed by the Greenbrook Parent Teacher Organization and chartered by the Boy Scouts of America through the Du Page Area Council of the Boy Scouts of America, and that immediately prior to the accident Searle had delivered craft materials, which were to be used for a scouting project, to the residence in Hanover Park. Based upon these alleged facts, plaintiffs sought to

---

[1]For those of us who are more familiar with street gangs than scouts, a webelos is a cub scout of the 5th rank who is at least 10½ years old and is preparing for entrance into boy scouting. According to Webster's Third New International Dictionary 2591 (1986), the word comes from the phrase "we'll be loyal scouts."

hold Greenbrook Parent Teacher Association, the Du Page Area Council and BSA vicariously liable for Searle's negligence on the theory of *respondeat superior*.[2]

On April 12, 1990, BSA moved for summary judgment. BSA did not deny that an accident took place or that Searle was negligent. Rather, it merely argued that BSA did not supervise or exercise any control over the day-to-day activities of local scouting units or the volunteer adult leaders of these units, in general, nor did it have any control over the actions of Searle in reference to the specific incident cited here. Therefore, no agency relationship existed between BSA and adult scout leaders, such as Searle, and BSA could not be held vicariously liable on the basis of *respondeat superior* or any other agency theory. After a hearing before Judge Hoffman on August 2, 1990, BSA's motion for summary judgment was granted. The court analogized the matter to a franchisor/franchisee situation and found that nothing in the charter or bylaws of the BSA indicated that BSA retained the power to control the actions of adult leaders. Thus, the court found that no principal-agent relationship existed and the negligence of Searle could not be imputed to BSA.

On September 25, 1990, the Du Page Area Council filed its motion for summary judgment. It, too, claimed that agency principles could not be applied to impose liability on it. The Council argued that, based upon the organizational scheme for scouting units, area councils exercised no direct control over the daily activities of local scouting units or their adult leaders. Thus, Searle, who was merely a webelos leader for a scouting unit within the Council's geographical district, could not be deemed an agent of the Du Page Area Council. A hearing was held on the motion on April 15, 1991, at which time Judge Schiller granted the Du Page Area Council summary judgment in its favor, finding that there was no evidence that an agency relationship existed.

The sole issue raised in the appeals is whether a factual issue exists on the question of Searle's agency relationship with the defendant organizations sufficient to have precluded judgment as a matter of law. Jurisdiction is vested in this court over these consolidated appeals because the orders contain the language required by

---

[2]The initial complaint filed September 12, 1989, named Daniel Searle as a party defendant. According to the record, a court-approved settlement was reached with Searle and so Searle is no longer a party to the action.

Supreme Court Rule 304(a), making these otherwise nonfinal orders final. 134 Ill. 2d R. 304(a).

Initially, we note, that with respect to the claim against BSA, plaintiffs argue on appeal that the law of the District of Columbia should apply rather than Illinois law. Plaintiffs maintain that because the charter, bylaws, rules and regulations of the BSA are what they rely upon to establish the extent of the power, control, rights and duties that BSA exerts over its adult scout leaders and because BSA is a District of Columbia corporation organized pursuant to Federal charter, the law of vicarious liability as followed in the District of Columbia should be controlling.

■■ Plaintiffs did not raise the choice of law issue at the trial court level, nor does plaintiff explain how District of Columbia law differs from the law of Illinois on the matter of vicarious liability. Therefore, we question whether this is even a valid issue on review or whether plaintiffs have waived this issue. However, even if we were to assume that plaintiffs were entitled to introduce this issue at this time, we would find it to be wholly without merit. Plaintiffs appear to assume that the charter, bylaws, rules and regulations promulgated by the BSA constitute some sort of a contract between the national organization and the many thousands of scouting leaders throughout the country. This is a premise we are not prepared to accept.

Furthermore, even if the charter were a contract, it would not require that we apply out-of-State law since this so-called "contract" has no provision for choice of law. Therefore, the court would apply the Restatement (Second) of Conflicts of Law analysis and determine the most significant relationship to the transaction, as well as other relevant policy interests. (See *Lyons v. Turner Construction Co.* (1990), 195 Ill. App. 3d 36, 551 N.E.2d 1062.) In doing so, it seems clear that Illinois law would apply in this case. In any event, regardless of whether Illinois or District of Columbia law applies, plaintiffs have failed to create a genuine issue of material fact on the issue of the vicarious liability of defendants.

■■ ■ A principal may be held vicariously liable for the wrongdoing of its agent. The test of agency is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal. (See *Rollins v. Ellwood* (1990), 141 Ill. 2d 244, 565 N.E.2d 1302, citing *Wargel v. First National Bank* (1984), 121 Ill. App. 3d 730, 460 N.E.2d 331; *Phipps v. Cohn* (1985), 139 Ill. App. 3d 210, 487 N.E.2d 428.) The

ability or right to control is a key element to the determination, regardless of whether or not the principal exercises that right to control. (*Illinois Nurses Association v. Illinois State Labor Relations Board* (1990), 196 Ill. App. 3d 576, 554 N.E.2d 404.) The question of whether a principal-agency relationship existed is generally one of fact, but it becomes one of law where the evidence is not disputed. (*Hirst v. Stackowski* (1990), 202 Ill. App. 3d 718, 560 N.E.2d 426.) Summary judgment may be granted in any case where an issue of fact is raised if, when viewing the evidence in a light most favorable to the plaintiff, the trial court concludes that no liability exists as a matter of law. (*McCann v. Bethesda Hospital* (1979), 80 Ill. App. 3d 544, 400 N.E.2d 16.) The burden of proving the existence of an agency relationship and the scope of authority is on the party seeking to charge the alleged principal. *In re Estate of Maslowski* (1990), 204 Ill. App. 3d 379, 561 N.E.2d 1183.

There is no case law in Illinois which establishes the relationship between the Boy Scouts of America, its district councils and the adult scouting unit leaders. Nor do we find any of the case law from other States at all persuasive because the facts of those cases are so vastly divergent from the factual scenario presented in this case. We see no reason to believe that the analysis applied in cases where scout leaders have sexually abused children entrusted to them has any correlation to this case, where plaintiffs attempt to hold BSA and the district council liable in a negligence action where the injured is not a member of a scouting unit and where the injury did not even occur during a scout-sponsored event.

In this case the Andersons rely solely upon the Federal charter, bylaws, rules and regulations of the BSA to support their claim that both BSA and the district council should be held liable for the negligence of Searle. Defendants rely upon the very same documents to support their position that local scouting units are autonomous in the operation of their daily activities and that district councils and the national organization, in general, have no power to supervise or control the daily activities of the local charters.

■ We agree with defendants. We find no provisions in the charter, bylaws, rules and regulations promulgated by the BSA, nor can plaintiffs cite to any provisions within these documents, which specifically grant BSA or its district councils direct supervisory powers over the method or manner in which adult volunteer scout leaders accomplish their tasks. Nor does it appear that volunteer scouting leaders have the power to affect the legal relations of BSA or its district councils. Therefore, plaintiffs failed to establish that

an agency relationship existed between Searle and the Du Page Area Council or BSA, and we can find no basis for holding BSA or Du Page Area Council vicariously liable for the negligent acts of Searle.

Furthermore, there was no evidence that BSA or the Du Page Area Council exercised any control over Searle on the date in question. There was no evidence that Searle was acting within the scope of his authority as a webelos leader when he operated his car, that he was asked to make the delivery of craft materials by anyone affiliated with the Boy Scouts, or that he was directed by anyone within the scouting organization with regard to his conduct in the performance of his duties. There was no evidence that driving is a requirement for adult scouting leaders or that BSA, or any of its district councils, inquired into or checked any adult leader's driving capability. In fact, we find the characterization of Searle's apparently gratuitous delivery of craft materials as a "scouting activity" tenuous at best. Consequently, we find that this case is essentially no different than those cases where plaintiffs have attempted to extend the liability of a negligent driver to passengers, or others, based upon some alleged agency-type relationship. (See *Hirst v. Stackowski* (1990), 202 Ill. App. 3d 718, 560 N.E.2d 426; *Fugate v. Galvin* (1980), 84 Ill. App. 3d 573, 406 N.E.2d 19; *Osborne v. City of Harvey* (1973), 16 Ill. App. 3d 740, 306 N.E.2d 601.) Just as in those cases, we find that liability for damages caused by a negligent driver does not attach against anyone other than the driver unless that person owns the vehicle or has the right to control the car.

For all the reasons stated above, we affirm the orders of the circuit court granting summary judgment to defendants Boy Scouts of America and Du Page Area Council.

Affirmed.

LORENZ and GORDON, JJ., concur.