THIRD DIVISION
March 21, 2007

No. 1-05-3967

| | | |
|---|---|---|
| CHRISTINE OLIVEIRA-BROOKS, Guardian of the Estate of Ana Marie de Oliveira Fernandes, a Disabled Person, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| RE/MAX INTERNATIONAL, INC., a Corporation, | ) ) ) ) | No. 01 L 15993 |
| Defendant-Appellee | ) ) | |
| (Roaring Fork Capital Partners, Inc., a Corporation, d/b/a Re/Max Northern Illinois, Antonio Nascimento, Mario J. Moretti, and T.S.W. #1, Inc., a Corporation, a/k/a Re/Max Midtown, | ) ) ) ) ) ) | Honorable Diane J. Larsen, |
| Defendants.) | ) ) | Judge Presiding. |

PRESIDING JUSTICE THEIS delivered the opinion of the court:

Plaintiff, Christine Oliveira-Brooks, as guardian of the estate of Ana Maria de Oliveira Fernandes, a disabled person, appeals from the order of the circuit court granting summary judgment in favor of defendant, Re/Max International, Inc. (Re/Max International). Plaintiff alleged that Re/Max International was vicariously liable for injuries Fernandes sustained in a accident while a passenger in a car driven by defendant Antonio Nascimento, a real estate sales associate affiliated with a Re/Max franchise. On appeal, plaintiff contends that summary

1-05-3967

judgment is not warranted because there is a genuine issue of material fact as to whether she

established an actual or apparent agency relationship sufficient to hold Re/Max International

vicariously liable for the alleged negligent conduct of Nascimento. For the following reasons, we

affirm the judgment of the circuit court.

BACKGROUND

At the outset, we set forth and delineate the identity of the various defendants. It is

undisputed that Re/Max International is the owner and licensor of the Re/Max trademarks and is

engaged in the business of selling Re/Max franchises. Nevertheless, in 1977, it assigned its right

to sell franchises in Illinois to the predecessor of Roaring Fork Capital Partners, Inc. doing

business as Re/Max Northern Illinois, under a regional licensing agreement. By assigning its

right to franchise, Re/Max International cannot sell franchises in Illinois, it has no ownership

interest in Re/Max Northern Illinois or its franchisees, and has no contractual relationship with

its franchisees or their sales associates. Re/Max Northern Illinois is the exclusive subfranchisor

of local Re/Max franchises in the northern Illinois region.[1]

Re/Max Midtown is a real estate brokerage business that entered into a franchise

agreement with Re/Max Northern Illinois to establish a local Re/Max franchise.[2] Nascimento

---

[1] Plaintiff's claim against Re/Max Northern Illinois settled prior to a ruling on its summary judgment motion.

[2] The trial court granted Re/Max Midtown's motion for summary judgment on its apparent agency claim, but denied its motion with respect to plaintiff's claim of actual agency. Thus, for purposes of this appeal, we assume that Nascimento was an agent of Re/Max Midtown. A separate appeal was taken with respect to Re/Max Midtown's claim of apparent agency, but that appeal has been stayed due to Midtown's bankruptcy filing.

was a licensed real estate sales associate affiliated with Re/Max Midtown through an independent contractor agreement.

On September 24, 2001, while Nascimento was driving Fernandes and her son, Alex, to view some real estate property for sale, Nascimento's car collided with another vehicle and Fernandes was seriously injured. In her third amended complaint, plaintiff alleged that Nascimento was an actual or apparent agent of the entities Re/Max Midtown, Re/Max Northern Illinois, and Re/Max International and that Nascimento was acting in the course of his agency at the time of the collision. Plaintiff further alleged that Nascimento, individually and as an actual or apparent agent of these entities, was negligent in failing to keep a proper and sufficient lookout and in failing to follow various rules of the road under the Illinois Vehicle Code (625 ILCS 5/11-100 *et seq.* (West 2000)).

During the pendency of the lawsuit, Re/Max International filed a motion for summary judgment against plaintiff, asserting that there was no actual or apparent agency relationship between Re/Max International and Nascimento. Therein, with respect to actual agency, it argued that the express provisions of the various agreements excluded an agency relationship, and it had no right to control or supervise the daily business activities of Re/Max Midtown or its sales associates. In support of its arguments, it attached the regional licensing agreement, the franchise agreement, the independent contractor agreement, and documents promulgated by Re/Max International, including trademark and graphic standards and its policy and procedure manual. Additionally, it attached deposition testimony from the following individuals: Re/Max International representatives, Re/Max Midtown's broker/owner, Nascimento, and Alex. Also

attached was Nascimento's business card indicating that each Re/Max office was independently owned and operated. With respect to the apparent agency claim, Re/Max International denied that plaintiff had come forward with any evidence that it held Nascimento out as its agent or that there was any evidence that Fernandes actually relied on any apparent agency relationship between Re/Max International and Nascimento.

The various agreements attempt to set forth the relationship between and among the Re/Max entities and affiliated sales associates. Under the terms of the regional licensing agreement, Re/Max Northern Illinois was granted "complete control, authority, and the right to conduct the business as [it] deem[ed] appropriate." The franchise agreement between Re/Max Northern Illinois and Midtown provides that Re/Max International and Re/Max Northern Illinois do not "exercise control over or attempt to influence the day-to-day activities or business methods of [Re/Max Midtown] [or] assume responsibility for the actions of [Re/Max Midtown]." The franchise agreement further defines the relationship of Re/Max Midtown as an independent contractor. Under the terms of the franchise agreement, Midtown was obligated to identify its franchise as being an independently owned and operated real estate service office.

Additionally, Nascimento had entered into a written agreement as part of his affiliation with Re/Max Midtown. That agreement provided in pertinent part:

> "[Nascimento] shall be deemed to be an independent contractor.
> [Nascimento] shall be free to devote to his real estate service
> business such portion of his entire time, energy, effort and skill as
> he sees fit and to establish his own endeavors. [Nascimento] shall

not be required to keep definite office hours, attend sales meetings or training sessions or adhere to sales quotas or participate in 'floor time.' [Nascimento] shall not have mandatory duties except those imposed by law or regulation and those specifically set out in this Agreement. Nothing contained in this Agreement shall be regarded as creating any relationship (employer/employee, joint venture, partnership, shareholder) between the parties other than the independent contractor relationship as set forth in this Agreement."

Additionally, the contract provided that Nascimento was required to adhere to office policies of Re/Max Midtown and the "System Standards" set forth by Re/Max Northern Illinois and Re/Max International. The contract further provided:

"[S]uch Office Policies and System Standards have been established for the purpose of preserving the reputation, high standards and goodwill associated with the RE/MAX name and service marks, but they do not, and are not intended to, govern the specific means and manner by which [Nascimento] conducts his day-to-day real estate activities as an independent contractor on behalf of [Re/Max Midtown]."

The contract also contained provisions indicating that Nascimento would be compensated solely by commissions, would not be treated as an employee for federal tax purposes, and would not be

covered by worker's compensation laws. Nascimento was also responsible under the agreement for his own automobile and the expenses related to it. He was required to obtain his own automobile insurance to protect himself against any liability which might arise in connection with the operation of his business as a real estate salesperson. He was also required to obtain a separate endorsement naming Re/Max Midtown, Re/Max Northern Illinois and Re/Max International as additional insureds on his policy. The agreement further provided that Re/Max International was not bound by or subject to the terms and conditions of the agreement between Nascimento and Re/Max Midtown.

In her response to the motion for summary judgment, plaintiff argued that despite the express terms of the contracts purporting to exclude an agency relationship with Re/Max International, Nascimento and Re/Max Midtown were subject to extensive rules and regulations which were promulgated by Re/Max International. These rules included requirements regarding the promotion of the Re/Max name, and a written policy manual, which she argued demonstrated extensive control over Re/Max franchisees and the sales associates. In support, plaintiff relied on certain provisions in the policy manual and independent contractor agreement specifically relating to sales associates. These provisions included sales associates' duties of loyalty, cooperation, secrecy, use of forms prescribed by Re/Max Midtown, use and display of the trademarks in a manner prescribed by Re/Max International, membership in a realty association, and duties to attend any claims prevention seminars that may be approved by their broker. Plaintiff also pointed to the requirement that sales associates were to be full-time employees and were to name International as an additional insured on their automobile policies. Additionally,

plaintiff attached the deposition testimony of Elizabeth Posso, Re/Max Midtown's broker/owner, as evidence that Re/Max International controlled the day-to-day operations of her local franchise and its sales associates.

The following relevant deposition testimony was presented to the circuit court. Posso testified that in about 1995, she decided to purchase a Re/Max franchise. As part of her ownership, she attended a mandatory training course at which time she was provided with instructions regarding the Re/Max system and was given specific policies and procedures for the operation of her franchise. She testified that she operated her franchise in accordance with the instructions provided during the training program and in accordance with the materials provided to her through Re/Max International. She did not disregard or develop her own policies and procedures and did not feel that she could run her Re/Max franchise in another way. She further testified that the independent contractor agreement entered into between Re/Max Midtown and Nascimento was developed by Re/Max International. She did not alter the contract in any way and did not believe she had the ability to change the terms set forth therein.

Posso further testified that she did not interfere with Nascimento's day-to-day real estate business and did not tell him how to operate it. Re/Max International never inspected any records in her office and never came to her office to discuss her business. With respect to the sales associates, Posso testified that they could come and go as they pleased, they had a key to the office, they did not have to go to the office, did not have to make "cold calls," and did not have to attend meetings. When Nascimento got a listing, she had no control over that listing. Nascimento was not required to inform her about his daily appointments on any given day with

respect to his real estate business.

Nascimento testified that his understanding was that he worked for Re/Max Midtown. He paid a monthly management fee, a fee for shared office expenses, an advertising fund fee, and annual membership dues for his affiliation with Re/Max International. He determined his own hours of work and determined what properties he would show. Nascimento was paid solely by commission. Nobody from Re/Max International ever called and told him how to do his job. He stated that he was not required to have an automobile to work at Re/Max, and none of the Re/Max entities contributed in any way to the payment of his vehicle or the upkeep of his vehicle. He was required to provide insurance for the vehicle, but his insurance had expired. He neglected to pay his premium and the coverage had lapsed. He was without insurance on the day of the collision.

With respect to Nascimento's relationship with Fernandes, Nascimento testified that he had known her and her son Alex socially for several years prior to the accident. They knew each other from the Brazilian community. He had also worked with Alex previously on another property and Fernandes had co-signed the agreement to purchase that property. He recalls that he told Alex that he worked for Re/Max International, but did not remember telling Fernandes that information. He recalled the conversation with Alex because he would tell his clients about Re/Max International to show that it was a big company, that Re/Max would help them if they needed anything, and that Re/Max International was all over the world.

Nascimento stated that the main reason why Alex and his mother selected him as their agent was because Alex knew that Nascimento had sold other properties for his uncle and other

friends and because he spoke English and Portugese. In Nascimento's mind, as far as Alex and Fernandes were concerned, it did not make a difference whether he worked for Century 21 or Re/Max

He recalled giving Alex and his mother his business card. The card had his name, along with Re/Max Midtown on it, and stated that it was an independently owned and operated office. According to Nascimento, Fernandes had been to the office on two or three occasions. The sign on the front of the office was labeled Re/Max Midtown. When Fernandes called on the telephone, he would answer, "Re/Max Midtown, Tony Nascimento." On the day of the collision, he wore a pin that showed he was associated with Re/Max and had a balloon sticker on the left side window of his car which was a Re/Max logo.

Alex testified that he chose to do business with Re/Max to buy his property because he saw the advertising and his uncle and a lot of friends had bought houses through Re/Max and they told him that he could trust that company. He found out that Nascimento worked for Re/Max, and he knew that he spoke Portuguese. When asked whether his mother was initially involved in the decision to use Re/Max to buy properties, Alex responded:

> "I decide- I was looking to buy a house before her. And the idea come up where [Nascimento] told me I didn't have credit enough to buy a building like that. And then I spoke with her, if she want to buy with me. And she said, I don't trust nobody, I said, no, it's a good company, and we can do that, which mean we can trust. Then she let me and this is it."

1-05-3967

After a hearing, the circuit court granted Re/Max International's motion for summary judgment on both plaintiff's actual and apparent agency claims against it. Plaintiff filed this timely appeal.

ANALYSIS

A motion for summary judgment is properly granted when the pleadings, depositions, admissions, and affidavits on file, taken in the light most favorable to the nonmoving party, establish that no genuine issue of material fact exists and, therefore, the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2004). "Although a plaintiff is not required to prove his case at the summary judgment stage, in order to survive a motion for summary judgment, the nonmoving party must present a factual basis that would arguably entitle him to a judgment." Robidoux v. Oliphant, 201 Ill. 2d 324, 335, 775 N.E.2d 987, 994 (2002). The standard of review of an order granting summary judgment is *de novo*. Chatham Foot Specialists, P.C. v. Health Care Service Corp., 216 Ill. 2d 366, 376, 837 N.E.2d 48, 54-55 (2005).

The doctrine of *respondeat superior* allows an injured party to hold a principal vicariously liable for the conduct of his or her agent. Moy v. County of Cook, 159 Ill. 2d 519, 523, 640 N.E.2d 926, 928 (1994). "The test of agency is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." Anderson v. Boy Scouts of America, Inc., 226 Ill. App. 3d 440, 443-44, 589 N.E.2d 892, 894 (1992). While the existence of any agency relationship is usually a question of fact, it becomes a question of law when the facts regarding the relationship are undisputed or no liability exists as a matter of law.

- 10 -

Anderson, 226 Ill. App. 3d at 444, 589 N.E.2d at 894.  "The burden of proving the existence of an agency relationship and the scope of authority is on the party seeking to charge the alleged principal."  Anderson, 226 Ill. App. 3d at 444, 589 N.E.2d at 894.

There is no dispute that Re/Max International and Re/Max Midtown had no contractual relationship, and that based upon the language of the various written agreements, the Re/Max entities clearly intended to exclude the possibility of any agency relationship.  Nevertheless, the declaration of the parties is not controlling where the conduct of the parties demonstrates the existence of an agency relationship.  Slates v. International House of Pancakes, Inc., 90 Ill. App. 3d 716, 726, 413 N.E.2d 457, 464-64 (1980).  Thus, to overcome summary judgment, and impute Nascimento's liability for his alleged negligent driving to Re/Max International based upon an actual agency relationship, plaintiff must produce some factual indicia to show that the true relationship was one which vested the right of control in Re/Max International.

After a review of the record and consideration of all of the evidence presented by plaintiff, we find no genuine issue of material fact with respect to an actual agency relationship between these defendants.  Re/Max International and Re/Max Midtown did not have a franchisor/franchisee contractual relationship, and thus, Re/Max International had no contractual right to control Re/Max Midtown.  Although there is evidence that Re/Max International promulgated policies and procedures intended for franchisees, there is no evidence that it retained the right to control the specific means and manner by which Re/Max Midtown sales associates conduct their day-to-day real estate activities so as to negate Re/Max International's intent.

The policy provisions plaintiff directs our attention to relate to general duties of a sales associate to abide by general system standards and a particular manner of advertising. Plaintiff points to the deposition testimony of Posso wherein she indicated, in general terms, that she was required to obtain franchisee training and to abide by the Re/Max system of operating her franchise. Nevertheless, inherent in any franchise is the need to protect the name, goodwill, reputation, and the trademarks and service marks it creates. 1 W. Michael Garner, Franchise and Distribution Law and Practice, §1:14, at 1-29 (2003). Additionally, the mere protection of a trade name does not create an agency relationship. Slates, 90 Ill. App. 3d at 725, 413 N.E.2d at 464.

Beyond that, with respect to the day-to-day business of the franchise and its sales associates, Posso and Nascimento specifically testified that Nascimento had complete discretion in the details of his day-to-day real estate sales operation. He handled his own real estate leads and prospects without interference from Re/Max International. Re/Max International did not have the right to control the means of securing listings and consummating sales negotiations. Under similar circumstances, this court has held that no actual agency relationship was established. See, e.g., Salisbury v. Chapman Realty, 124 Ill. App. 3d 1057, 1061, 465 N.E.2d 127, 131-32 (1984) (court held no actual agency relationship despite facts that franchisee was required to conduct its business according to terms of confidential operations manual, could send employees to training sessions conducted by the franchisor, agreed to maintain its offices, furnishings, and supplies according to franchisor's standards, and franchisor could inspect franchisee's accounts at reasonable times); Slates, 90 Ill. App. 3d at 726-27, 413 N.E.2d at 464-

66 (court found right to control necessary to establish agency relationship lacking despite franchisor's power to promulgate operational procedures manual, franchisor's training and supervision of franchisees, quality control, record keeping and accounts, periodic inspections, appearance of premises, hours of operation, employees' appearance and demeanor); O'Banner v. McDonald's Corp., 273 Ill. App. 3d 588, 592-93, 653 N.E.2d 1267, 1270 (1995) (court upheld entry of summary judgment on plaintiff's actual agency theory where written agreement unequivocally stated that franchisee was not an agent and no facts revealed that the franchise agreement was not followed), *rev'd on other grounds*, 173 Ill. 2d 208, 670 N.E.2d 632 (1996). Accordingly, we find that Re/Max International had no right to control the manner and method of work of Re/Max Midtown's sales associates, including Nascimento, and could not affect the legal relationships of Re/Max International.

Aside from control, plaintiff argues that evidence that Nascimento was required to name Re/Max International as an additional insured is evidence that Re/Max International implicitly accepted responsibility and acknowledged liability for Nascimento's alleged negligent driving. We reject plaintiff's assertion. In support, plaintiff cites to Pantaleo v. Our Lady of Resurrection Medical Center, for the proposition that the existence of insurance may be relied upon " 'in connection with issues such as agency, ownership, control, bias, or prejudice of a witness.' " Pantaleo v. Our Lady of Resurrection Medical Center, 297 Ill. App. 3d 266, 279-80, 612 N.E.2d 969 (1988), quoting Boettcher v. Fournie Farms, Inc., 243 Ill. App. 3d 940, 945, 612 N.E.2d 969, 973 (1993). Although we agree with the general proposition that evidence of insurance may be relevant in connection with an agency issue, Pantaleo does not stand for the proposition that, as a

matter of law, evidence of insurance can be used to establish an actual agency relationship where no other evidence of the right to control exists. If that were the case, then every franchisor/franchisee relationship would automatically be an agency relationship and every contractor/subcontractor relationship would be an agency relationship. Thus, although this type of evidence may be relevant, it cannot alone serve as justification for imposing vicarious liability in this context. See Hayman v. Ramada Inn, Inc., 357 S.E.2d 394, 398 (N.C. App. 1987) (summarily rejecting the same proposition).

Furthermore, Pantaleo is distinguishable on its facts. There, evidence that a hospital purchased insurance for a physician was relevant to show an agency relationship. Pantaleo, 297 Ill. App. 3d at 279-80, 612 N.E.2d at 979. Here, Nascimento was required to obtain his own insurance while naming Re/Max International as an additional insured. Thus, in requiring Nascimento to purchase his own insurance and pay for Re/Max International's premium to be an additional insured, Re/Max International is attempting to shift the risk of loss onto Nascimento. Accordingly, this evidence alone cannot, as a matter of law, create a genuine issue of material fact to establish an actual agency relationship without some indicia of the right to control the day-to-day real estate business operations. Therefore, for the foregoing reasons, the trial court properly granted summary judgment in favor Re/Max International on plaintiff's actual agency theory of liability.

We next address plaintiff's contention that there is a genuine issue of material fact with respect to her claim of apparent agency between Nascimento and Re/Max International. Apparent agency is rooted in the doctrine of equitable estoppel and is based upon the idea that "if

a principal creates the appearance that someone is his agent, he should not then be permitted to deny the agency if an innocent third party responsibly relies on the apparent agency and is harmed as a result." O'Banner v. McDonald's Corp., 173 Ill. 2d 208, 213, 670 N.E.2d 632, 634-35 (1996). "Under the doctrine, a principal can be held vicariously liable in tort for injury caused by the negligent acts of his apparent agent if the injury would not have occurred but for the injured party's justifiable reliance on the apparent agency." O'Banner, 173 Ill. 2d at 213, 670 N.E.2d at 634-35.

To prove apparent agency, one must establish: (1) that the principal held the agent out as having authority or knowingly acquiesced in the agent's exercise of authority; (2) based on the actions of the principal and agent, the third person reasonably concluded that an agency relationship existed; and (3) the third person relied on the agent's apparent authority to his detriment. Gilbert v. Sycamore Municipal Hospital, 156 Ill. 2d 511, 525, 622 N.E.2d 788, 795 (1993).

At the outset, we note that plaintiff failed to allege facts in her complaint to support her apparent agency claim. She made no allegation that Re/Max International held out Re/Max Midtown's sales associates as its agents, or that Fernandes relied on the purported agency relationship. Fact pleading is required in Illinois. Knox College v. Celotex Corp., 88 Ill. 2d 407, 424, 430 N.E.2d 976, 984 (1981). "A complaint relying on agency must plead facts which, if proved, could establish the existence of an agency relationship. It is insufficient to merely plead the legal conclusion of agency." Connick v. Suzuki Motor Co., 174 Ill. 2d 482, 498, 675 N.E.2d 584, 595 (1996). Furthermore, although plaintiff argues that she has presented sufficient facts to

support her apparent agency claim to withstand summary judgment, she merely focuses on the reliance element without articulating facts to support the other necessary elements of apparent agency.        Nevertheless, in her reply brief, she argues for the first time that Re/Max International held Nascimento out as its agent by leading the public to believe that it was dealing with an agent of a national establishment. She asserts that Re/Max International creates that appearance through its advertising, as well as Nascimento's testimony that he mentions Re/Max to his clients to draw upon the big name and credibility of Re/Max, wears a Re/Max pin, and has a sticker with a Re/Max logo on his car.

Nonetheless, in O'Banner, the court held that even if such evidence was sufficient on the element of "holding out," this alone would be insufficient to establish apparent agency. In order to recover, the court reiterated the requirement that plaintiff would have to show that "he actually did rely on the apparent agency in going to the restaurant where he was allegedly injured." O'Banner, 173 Ill. 2d at 213, 670 N.E.2d at 635. Here, plaintiff concedes that there is no direct evidence in the record regarding Fernandes' reliance, but argues that her son Alex relied on an agency relationship and his reliance is sufficient circumstantial evidence to be imputed to Fernandes because after the crash, she was unable to testify as to her own reliance.

In support of this reliance argument, she cites several vicarious liability cases involving the alleged apparent agency relationship between a hospital and physician. Nosbaum v. Martini, 312 Ill. App. 3d 108, 726 N.E.2d 84 (2000); Monti v. Silver Cross Hospital, 262 Ill. App. 3d 503, 637 N.E.2d 427 (1994); Chicago Title & Trust Co. v. Sisters of St. Mary, 264 Ill. App. 3d 913, 637 N.E.2d 543 (1994). Initially, we reiterate that the supreme court has indicated that the

apparent agency relationship in a hospital setting is unique and we treat the element of reliance more broadly in the health-care context than in other contexts. See, *e.g.,* York v. Rush-Presbyterian-St. Luke's Medical Center, 222 Ill. 2d 147, 854 N.E.2d 635 (2006).

Moreover, in these hospital cases, to establish reliance, the court held that where a patient was unable to consent to care either because he was unconscious or a minor, the evidence of those responsible for the patient's care, the decision-maker at the time he went to the hospital, would be sufficient in establishing a plaintiff's reliance on the hospital to provide medical care. See, *e.g.*, Nosbaum, 312 Ill. App. 3d at 121, 726 N.E.2d at 94. The instant case is distinguishable from those cases, namely because plaintiff asserts that Fernandes was the decision-maker and a potential purchaser. Thus, at the time of her decision to work with Nascimento to view a prospective property for sale, she was fully conscious and able to make her own determination with respect to the issue of reliance. The problem here is not that Fernandes was unable to testify after the accident and, thus, there could be no evidence of her state of mind at the time. Rather, there is simply no evidence from which an inference could be made that she actually relied on an apparent agency relationship between Re/Max International and Nascimento in choosing him for her real estate needs. Indeed, the only affirmative evidence of her state of mind in the record was, according to Nascimento, that she chose to work with him because she knew him from the Brazilian community, he spoke her native language, and friends and relatives had purchased properties through him.

Plaintiff points to Alex's testimony that although Fernandes expressed to him a lack of trust when doing business, he alleviated her concerns by indicating that Re/Max was a good

1-05-3967

company.   This evidence merely establishes that Fernandes relied on her son or, at most, on her son's perception of an agency relationship and not on anything that Re/Max International or Nascimento "held out" to her.  Plaintiff has not cited, nor do we find a case in this context where reliance of another can be imputed to establish an apparent agency.  Accordingly, we find that here, the son's state of mind cannot be imputed to Fernandes to support an inference of her actual reliance.  Therefore, based on the facts presented in this case, the trial court properly granted summary judgment in favor of Re/Max International on plaintiff's apparent agency theory of liability.

Accordingly, for the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

GREIMAN and KARNEZIS, JJ., concur.

CHRISTINE OLIVEIRA-BROOKS, as Guardian of the Estate of Ana Maria de Oliveira Fernandes, a Disabled Person,

Plaintiff-Appellant,

v.

RE/MAX INTERNATIONAL, INC., a Corporation,

Defendant-Appellee,

(Roaring Fork Capital Partners, Inc., a Corporation, d/b/a Re/Max Northern Illinois, Antonio Nascimento, Mario J. Moretti, and T.S.W. #1, Inc., a Corporation, a/k/a Re/Max Midtown,

Defendants.)

No. 1-05-3967

Appellate Court of Illinois
First District, Third Division

Filed: March 21, 2007

PRESIDING JUSTICE THEIS delivered the opinion of the court.

Greiman and Karnezis, JJ., concur.

Appeal from the Circuit Court of Cook County
Honorable Diane J. Larsen, Judge Presiding

| For PLAINTIFF - APPELLANT | John L. Nisivaco<br>Dolan & Nisivaco<br>30 N. LaSalle St., Suite 2900<br>Chicago, IL 60602 | William R. Quinlan<br>Martin J. O'Hara<br>Sarah R. Sallee<br>Quinlan & Carroll, Ltd.<br>30 N. LaSalle St., Suite 2900<br>Chicago, IL 60602 |
|---|---|---|
| For DEFENDANTS - APPELLANTS | Howard K. Priess II<br>Maureen A. Coleman<br>Tressler, Soderstrom,<br>Maloney & Priess<br>233 S. Wacker Dr., 22nd Floor<br>Chicago, IL 60606 | Stephen J. Squeri<br>Jones Day<br>901 Lakeside Ave.<br>Cleveland, OH 44114<br><br>Brian J. Murray<br>Jones Day<br>77 W. Wacker Dr., Suite 3500<br>Chicago, IL 60601 |