# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3387

_____

| | | |
|---|---|---|
| Marilyn Pona, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Cecil Whittaker's, Inc., | * | |
| | * | |
| Appellee, and | * | |
| | * | |
| C. W. Central Westend, Inc.; | * | |
| Eye's Enterprises, Inc.; Paul | * | |
| Lia, as Trustee of Eye Enterprises, | * | Appeal from the United States |
| Inc.; Ralph Lia, as Trustee of Eye | * | District Court for the Eastern |
| Enterprises, Inc.; Jim Craddock, | * | District of Missouri. |
| as Trustee of Eye's Enterprises, Inc.; | * | |
| Paul Lia, In His Individual Capacity; | * | |
| Ralph Lia, In His Individual Capacity; | * | |
| Jim Craddock, In His Individual | * | |
| Capacity, | * | |
| | * | |
| Defendants, and | * | |
| | * | |
| St. Louis Board of Police | * | |
| Commissioners; Ann Marie Clarke, | * | |
| Member of the City of St. Louis | * | |
| Board of Police Commissioners; | * | |
| Mathew J. Padberg, Member of the | * | |
| City of St. Louis Board of Police | * | |
| Commissioners; Robert Haar, | * | |
| Member of the City of St. Louis | * | |

Board of Police Commissioners;  *
Freeman Bosley, Jr., Member of  *
the City of St. Louis Board of  *
Police Commissioners; Charles  *
Mischeaux, Member of the City  *
of St. Louis Board of Police  *
Commissioners; Michael  *
Calcaterra, In His Individual  *
Capacity and as a Police Officer  *
for the City of St. Louis; Matthew  *
Rodden, In His Individual Capacity  *
and as a Police Officer for the City  *
of St. Louis; and Joseph W. Robinson,  *
In His Individual Capacity and as a  *
Police Officer for the City of  *
St. Louis,  *
 *
Appellees.  *

_____

Submitted: June 10, 1998

Filed: September 18, 1998

_____

Before RICHARD S. ARNOLD and MORRIS SHEPPARD ARNOLD, Circuit
Judges, and PANNER,[1] District Judge.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

After the employees of a Cecil Whittaker's Pizzeria asked Marilyn Pona to leave
their premises because she had a service dog with her, Ms. Pona, who suffers from

_____

[1]The Honorable Owen M. Panner, United States District Judge for the District
of Oregon, sitting by designation.

-2-

degenerative spine and joint disease, filed suit, laying claims under the Americans with Disabilities Act (ADA), see 42 U.S.C. §§ 12101-12213, 42 U.S.C. § 1983, and the Missouri Human Rights Act (MHRA), see Mo. Rev. Stat. §§ 213.010-213.137. The district court granted summary judgment in favor of two of the sets of defendants, and Ms. Pona appeals. We affirm the judgment of the district court.[2]

## I.

One of Ms. Pona's complaints against Cecil Whittaker's, Inc. (CW), was that it violated Title III of the ADA, see 42 U.S.C. § 12182(a), which provides that no one "who owns, leases (or leases to), or operates a place of public accommodation" may discriminate against anyone "on the basis of disability in the full and equal enjoyment of ... any place of public accommodation." CW maintains that, as the franchisor of the pizzeria, it did not own, lease, or operate the pizzeria, and therefore cannot be liable under the ADA. The district court agreed with CW, and so do I.

It is undisputed that CW was only a franchisor, and that under its franchise agreement it reserved no right to control entry to the pizzeria. Ms. Pona produced evidence in the district court, however, that the pizzeria's manager telephoned Donald Glenn, the president of CW, and asked him whether Ms. Pona's dog should be allowed on the premises, and that Mr. Glenn told the manager that he "wouldn't have any animals in [his] restaurant" because it "doesn't look good for the franchise." Ms. Pona asserts that in making this statement Mr. Glenn sufficiently insinuated himself into the matter to make CW liable for her exclusion from the restaurant. Mr. Glenn denies that he made any such statement, but, for summary judgment purposes, we are of course obligated to assume that he did.

---

[2]The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

Even assuming that Mr. Glenn did what Ms. Pona alleged, I believe that summary judgment in CW's favor was appropriate. The fact, if it is one, that Mr. Glenn gave advice to the pizzeria manager and that the manager took it does not establish that CW owned, leased, or operated the pizzeria within the meaning of the ADA. The fact that Mr. Glenn influenced the manager's action is not, to my mind, enough. He had no right to control the manager's actions in any relevant respect, and, absent any such right, no violation of the ADA appears. Cf. Neff v. American Dairy Queen Corp., 58 F.3d 1063, 1066-69 (5th Cir. 1995), cert. denied, 516 U.S. 1045 (1996).

Ms. Pona also argues that the pizzeria had apparent authority to act on behalf of CW, and therefore that the law of agency imputes the manager's act to CW. As the district court recognized, this argument is entirely without merit. The question of CW's liability under Title III of the ADA depends on its actual connection to the premises, not on Ms. Pona's belief about that relationship. Besides, the mere fact that a franchisor's sign appears on a building and the employees within that building wear uniforms bearing the franchisor's logo and insignia does not clothe a franchisee with the apparent power to act on the franchisor's behalf in anything approaching a general way. Nothing in the record, moreover, would indicate that CW did anything to give customers the impression that it controlled access to the building. Nor can Ms. Pona show that she relied on any such impression. See Wilson v. United States, 989 F.2d 953, 959 (8th Cir. 1993).

Ms. Pona's Title III claim against the St. Louis police officers, based on the fact that they asked her to leave the pizzeria, is even more obviously infirm, because there is not a colorable claim that the officers owned, leased, or operated the pizzeria in question. The claim therefore necessarily fails on its face.

II.

Ms. Pona contends that the Board of Police Commissioners of the City of St. Louis (Board) has in place a policy that denies a right secured to her by Title II of

the ADA, see 42 U.S.C. § 12132, which makes it illegal for a public entity to exclude a qualified person with a disability "from participation in ... the services ... of a public entity."  She bases her claim on her assertion that when St. Louis police officers arrived to mediate the dispute between her and the pizzeria employees, they refused to explain to the employees that Mo. Rev. Stat. § 209.150 gave Ms. Pona the right "to be accompanied by ... a service dog" in "places of public accommodation"; instead, Ms. Pona alleges, the officers simply informed her of her civil remedies and asked her to leave.  They did so, Ms. Pona maintains, pursuant to what she characterizes as a Board policy, namely, Special Order 86-S-31, which, she asserts, prohibits members of the St. Louis Police Department from "tak[ing] any enforcement action" with respect to § 209.150.  This policy, Ms. Pona claims, violates the ADA because it denies her "the services ... of a public entity," see 42 U.S.C. § 12132.

I leave to another day the question of whether such a policy might violate the ADA, because I believe that the district court correctly held that the Board did not promulgate the policy that Ms. Pona says offends the ADA.  The policy is, on its face, not an order of the Board.  The Board has the authority to issue General Orders, but Special Orders are the exclusive province of the Chief of Police.  See St. Louis Police Manual § 1.030, § 1.031(a), § 1.503.  As the district court pointed out in its opinion, "it is undisputed that the individuals comprising the Board of Police Commissioners did not draft, issue, approve or otherwise authorize the Special Order."  Ms. Pona states in her brief that "the evidence clearly shows that the Board has at least approved Special Order 86-S-31," but she directs our attention to no such evidence, and, moreover, she cites no authority that would undermine the Board's position that it does not issue Special Orders.  The Board's witnesses did opine that the Special Order applied to § 209.150 violations (more on this later), but this has no bearing on the question of the source of the Order.

Even if the Board could be liable for Special Orders issued by the police chief, on the ground, for instance, that with respect to these the chief is in some respects the

Board's delegated policy-maker (an argument that Ms. Pona does not advance), her argument would nevertheless fail. Her claim is that the policy denied her the protection of § 209.150, when, on its face, the Special Order speaks only of violations of § 3.44 of the Revised Code of the City of St. Louis, which prohibits discrimination on account of "disability ... with respect to the uses, services and enjoyment of a place of public accommodation." The Order nowhere mentions the similar provisions of § 209.150. The Order, therefore, does not apply to those provisions as a matter of law, and the testimony alluded to above cannot undo that legal fact. That testimony is nothing more nor less than a mistaken statement of law and cannot, despite Ms. Pona's vigorous argument to the contrary, be made somehow to bind the Board.

If there had been testimony that the Order was customarily understood as applying to § 209.150, or if there had been evidence that there were other occasions on which the Order had actually been applied to § 209.150, then perhaps there would have been proof of a policy, practice, or custom sufficient to survive summary judgment. But that is not the state of the record. The absence of such evidence is, on reflection, hardly surprising. Complaints about the exclusion of service dogs from places of public accommodation must surely, as a practical matter, not be numerous, both because service dogs are comparatively rare and because proprietors will hardly ever be so callous as to exclude them. Evidence of the kind of custom that would give rise to a claim like the one that Ms. Pona makes here would therefore be virtually impossible to come by.

Ms. Pona's arguments with respect to Title II of the ADA and the Board therefore fail, and I would affirm the district court's grant of summary judgment on that claim.

III.

Ms. Pona's complaint contained a count against the Board seeking a remedy under 42 U.S.C. § 1983 for the violation of the ADA that I have just disposed of. Because the ADA claim fails, the § 1983 claim based on it necessarily falls with it.

I believe, moreover, that even if the ADA claim had survived, we would have been obligated to affirm the district court's summary judgment against Ms. Pona on the § 1983 claim, because an ADA violation is not actionable under § 1983 in any case. While that provision, of course, can, in proper circumstances, be used to vindicate the denial of rights secured by statutes of the United States, we must be mindful of the principle that if the statutory right that a plaintiff seeks to vindicate comes outfitted with its own comprehensive remedial apparatus, a § 1983 action based on a violation of that statutory right will not lie. That is because we are to presume that Congress intended that the enforcement mechanism provided in the statute be exclusive. See, e.g., DeYoung v. Patten, 898 F.2d 628, 634-35 (8th Cir. 1990).

I note that while the EEOC plays no role in the enforcement of Title II of the ADA, Congress has provided that title with detailed means of enforcement that it imported from Title VII of the Civil Rights Act of 1964, see 42 U.S.C. § 12133, 29 U.S.C. § 794a(a)(1), see also 42 U.S.C. § 2000e-5, § 2000e-16, including giving a right to the person aggrieved, see 42 U.S.C. § 2000e-5(f)(1), § 2000e-16(c), or, in appropriate cases, to the Attorney General of the United States, see 42 U.S.C. § 2000e-5(f)(1), to bring a civil action. The ADA, moreover, directs the Attorney General to promulgate regulations implementing Title II. See 42 U.S.C. § 12134(a).

In these circumstances, I think that Congress has, under the applicable legal principles, rather clearly indicated an intention to make the remedies that Title II itself gives the exclusive ones for the enforcement of that subchapter. Indeed, we have already so held. See Davis v. Francis Howell School District, 104 F.3d 204, 206 (8th Cir. 1997). The Eleventh Circuit subsequently reached the same conclusion in

Holbrook v. City of Alpharetta, Georgia, 112 F.3d 1522, 1530-31 (11th Cir. 1997), and I believe correctly so.

Ms. Pona also seeks redress under § 1983 for the acts that she laid as a Title III violation against the St. Louis police officers.  Since, as I have said, that claim failed as a matter of law, its restatement as a § 1983 claim necessarily fails also.  I intimate no view on the question of whether Title III violations can ever form the basis for a cause of action under § 1983.

IV.

Ms. Pona's final claim is that CW, the Board, and the St. Louis police officers violated the MHRA, which makes it unlawful to "deny any ... person ... any of the accommodations ... made available in any place of public accommodation ... on the grounds of ... handicap."  See Mo. Rev. Stat. § 213.065.2.  In the first place, I doubt that the facts would support a finding that Ms. Pona was denied service at the pizzeria "on the grounds of ... handicap."  It was her dog, not Ms. Pona herself, to which the pizzeria employees raised objection.  Passing over that point, however, I believe, for the reasons already indicated, that CW did not deny Ms. Pona anything, because, as I have said, it had no right to control the premises under the franchise arrangement.

Ms. Pona asserts in her brief that the gravamen of her complaint against the Board and the police officers is that it was the Board's policy of refusing to force compliance with § 209.150 that denied her the services of a place of public accommodation and thus violated § 213.065.2.  Since I have already held that there was no such policy, I would affirm the judgment of the district court on this count without addressing the specific reasons that the district court advanced in support of that judgment.

V.

For the reasons given, I would affirm the judgment of the district court.

-8-

OWEN M. PANNER, District Judge, concurring in part and concurring in the judgment.

I agree that plaintiff's claims against the franchisor and the individual police officers under Title III of the Americans with Disabilities Act ("ADA") must be dismissed for the reasons cited by Judge Morris Arnold. In addition, I note that in a civil action under Title III of the ADA, a private plaintiff can obtain only injunctive relief, not the compensatory and punitive damages that plaintiff seeks. *See* 42 U.S.C. § 12188(a).

I also agree that plaintiff has failed to state a claim under 42 U.S.C. § 1983. In my view, violations of Title II and Title III of the ADA are not cognizable as § 1983 claims. To hold otherwise would disrupt the statutory scheme enacted by Congress which explicitly limits the remedies available for violations of the ADA.

I would affirm the dismissal of plaintiff's claims against the members of the Board of Police Commissioners under Title II of the ADA, though not for the reasons stated by the district court. The police officers who asked plaintiff to leave the restaurant, and Major Pollihan, who was designated to represent the Board of Police Commissioners, all testified that they understood Special Order 86-S-31 applied not only to violations of the city ordinance but also to enforcement of the state law. For purposes of opposing a motion for summary judgment, that is sufficient to carry the day. Although the challenged Special Order was issued by the Police Chief, while the defendants are members of the Board of Police Commissioners, the defendants are the Chief's bosses and they have the power to alter the challenged policy. That is sufficient since, as I read Title II of the ADA and its cross-references to 29 U.S.C. § 794a, the only remedy available to plaintiff in this circumstance is equitable relief. Therefore, I agree with Judge Richard Arnold that we must address the merits.

-9-

Unlike Judge Richard Arnold, however, I would hold that this policy does not violate Title II of the ADA. The policy does not refuse service to persons with disabilities. If a disabled individual calls to report a burglary, stolen car, or loud party, the police handle the call no differently than they would handle a call from any other citizen. What the police do have is a policy of not taking sides in disputes concerning discrimination in public accommodations, preferring to let those matters be handled through civil proceedings. This is not a policy targeted solely at persons with disabilities, but includes all incidents concerning these laws, including race, religion, and gender. There is a civil enforcement mechanism available, and the police advise individuals of their right to initiate such action.

The police did not discriminate against plaintiff because she has a disability. They treated her precisely the same as they treat all persons in that situation, disabled or not. Nor is this a case where the police denied plaintiff a reasonable accommodation that would let her enjoy the same public services as other citizens. Summary judgment should be granted for defendants on this claim, albeit not for the reasons articulated by the trial court.

Finally, I respectfully disagree with the suggestion that denial of services on account of plaintiff's service dog was not denial of services on account of her disability. Nevertheless, I agree that the state law claim should be dismissed.

I concur in the judgment affirming the dismissal of this action.

RICHARD S. ARNOLD, Circuit Judge, concurring in part and dissenting in part.

As to the defendant Cecil Whittaker's, Inc., I agree entirely with the Court, and I join Part I of the Court's opinion. Cecil Whittaker's, Inc., was only a franchisor. It did not own, lease, or operate the place of business in question. Accordingly, it cannot be liable under the Americans with Disabilities Act.

As to the claim against the Board of Police Commissioners, however, I respectfully dissent. Special Orders, issued by the Chief of Police of the City of St. Louis, are contained in a booklet called the St. Louis Police Manual. This booklet is distributed to police officers and is intended to govern their conduct. The Board does not contend that it did not know about the booklet. The Chief of Police is the executive and administrative head of the Police Department. To say that a Special Order issued by the Chief in written and published form is not a policy of the Police Department seems untenable to me. All policy-making power does not have to reside in the Board. The Board is allowing the Chief, at least in practice, to make policy.

But what about the content of the policy? As the lead opinion says, the Special Order speaks only of violations of the Revised Code of the City of St. Louis. It says nothing about the Missouri Human Rights Act. But witnesses for the Board, as the lead opinion acknowledges, took the position that the Special Order did apply to violations of the statute having to do with the admission of disabled persons to places of public accommodation. It seems to me that this testimony, coming from witnesses who should know what they are talking about, is sufficient, at least for purposes of summary judgment, to establish that the Board had a policy of the sort of which the plaintiff complains. Or, if there was no policy, at least there was a custom, and municipal agencies are liable if either a policy or a custom causes an injury. See, e.g., Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163-166 (1993). Whatever the Special Order says on its face, however we choose to construe it as a legal document, the fact remains that it was applied in practice as though it affected enforcement of the state statute, and not merely of the City Code.

Such a policy, which denies to disabled citizens a state-law right, and withholds from them, in that respect, law-enforcement services available to citizens generally, is inimical to the letter and spirit of federal law. Therefore, with respect to the ADA claim against the Board of Police Commissioners, I respectfully dissent.

-11-

A true copy.

Attest:

    CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.