Taylor GIPSON, Plaintiff,

v.

POPEYE'S CHICKEN & BISCUITS
et al., Defendants.

Civil Action No. 1:12–cv–03210–JOF.

United States District Court,
N.D. Georgia,
Atlanta Division.

April 22, 2013.

Allan Leroy Parks, Jr., Parks Chesin & Walbert, P.C., Parks Chesin & Walbert, Atlanta, GA, for Plaintiff.

Ogletree Deakins Nash Smoak & Stewart, Tampa, FL, Dara L. DeHaven, Lauren House Zeldin, Ogletree Deakins Nash Smoak & Stewart, P.C., Atlanta, GA, for Defendant, Popeye's Chicken & Biscuits, a/k/a Nashville Restaurant Management, LLC.

Deborah L. Dance, Mark Alan Adelman, Office of Cobb County Attorney, Law Department, Marietta, GA, for Defendant, Cobb County, Georgia.

## ORDER

J. OWEN FORRESTER, Senior District Judge.

This matter is before the court on Defendant Cobb County's motion to dismiss [15].

## I. Background

### A. Procedural History and Facts Alleged in Complaint

Plaintiff, Taylor Gipson, filed suit against Defendants Popeye's Chicken & Biscuits and Cobb County, Georgia contending that Defendants violated his rights under the Americans with Disabilities Act when he was asked to leave a Popeye's Restaurant on account of the presence of his service dog. Plaintiff raised other causes of action against Popeye's Restaurant that are not relevant to the instant motion.

On Cobb County's motion to dismiss, the court accepts the facts as alleged in Plaintiff's complaint. Plaintiff contends that he is a 20–year old college student who suffers from Type I Diabetes and is entitled to protection under the Americans with Disabilities Act. *See* Cmplt., ¶¶ 3, 6. Plaintiff uses a service dog named Bear who can detect high and low blood sugar levels in Plaintiff by smell. *Id.*, ¶ 6. Bear can then alert Plaintiff to these dangerous blood sugar levels. *Id.*

On May 12, 2012, Bear alerted Plaintiff that his blood sugar was low. *Id.*, ¶¶ 7–8. Plaintiff then entered the Popeye's restaurant to order food to correct his blood sugar level. *Id.*, ¶ 8. After Plaintiff ordered, he took a table near the back door to wait for his food. *Id.* Bear lay quietly on the floor next to Plaintiff. *Id.*

After he sat down, Shanika Parks, who identified herself as the manager of the restaurant, came to Plaintiff stable. *Id.*, ¶ 9. She asked if Bear was a "seeing eye" dog. *Id.*, ¶ 10. Plaintiff responded "no" and Parks demanded that Plaintiff leave the restaurant because his dog was not allowed on the premises. *Id.* Plaintiff told Parks that Bear was a service dog and permitted in public establishments by federal law. *Id.*, ¶ 11. Plaintiff explained how Bear helped him and pointed out that Bear wore a vest which identified him as a service dog. *Id.*

Parks "became agitated" when Plaintiff stated he had a right under the Americans with Disabilities Act to remain in the restaurant with Bear. *Id.*, ¶ 12. Her "agitation escalated" when Plaintiff would not leave. *Id.* Parks stated that Plaintiff was "costing her customers" and "demanded" that Plaintiff and Bear "get out of her restaurant." *Id.* Despite Parks's "escalating hostility and agitation," Plaintiff "calmly" explained to Parks why he was legally entitled to have Bear in the restaurant. *Id.*, ¶ 13.

Parks then threatened to call the Cobb County Police Department to remove Plaintiff and Bear. *Id.*, ¶ 14. Plaintiff again refused to leave and explained that he had a right to have Bear in the restaurant with him. *Id.* Parks then called the police. *Id.* Plaintiff, himself, also placed a call to the police so that the police could explain Plaintiff's rights to Parks. *Id.*, ¶ 15.

While waiting for the police, another customer approached Parks and told Parks that Plaintiff had a right to have Bear in the restaurant. *Id.*, ¶ 16. That customer apologized to Plaintiff for Parks's behavior. *Id.*

When the police arrived, Parks quickly went outside to meet the officer and loudly demanded that Plaintiff and Bear be ordered off the property or removed by force. *Id.*, ¶ 17. Plaintiff's mother arrived on the scene to hear Parks's conversation with the police. *Id.* Plaintiff also then spoke with Officer Fuller and explained why he believed under the Americans with Disabilities Act that he and Bear had a right to be in the restaurant. *Id.*, ¶ 18. Plaintiff's mother offered Officer Fuller a card which explained Plaintiff's rights, but Officer Fuller declined to look at it. *Id.*

Officer Fuller stopped Plaintiff from speaking and said he "knew the law." *Id.*

Officer Fuller spoke with Parks again and she again stated that Plaintiff had to leave the property. *Id.*, ¶ 19. Officer Fuller explained to Plaintiff that because the restaurant was "private property," Plaintiff and Bear were trespassing and had to leave immediately. *Id.* Although Plaintiff again tried to explain his rights, Plaintiff was eventually "forced to comply" with Parks's demand that he leave the restaurant. *Id.*

Plaintiff attaches a copy of Officer Fuller's incident report to his complaint. *Id.*, ¶ 20. The incident report reflects that Parks told Officer Fuller that Plaintiff contended Bear was a service dog, but that she believed that several customers walked inside the business and then left because of the presence of the dog. *Id.*, ¶ 21. The report also states that Parks checked with her general manager who confirmed that she should ask Plaintiff to leave. *Id.*, ¶ 22. Officer Fuller notes in the report that Bear was wearing a service vest. *Id.*, ¶ 23. The report confirms that Officer Fuller told Plaintiff the restaurant was private property and that Plaintiff would have to leave upon request. *Id.*, ¶ 24.

Plaintiff alleges that Cobb County is a "public entity" under Title II of the Americans with Disabilities Act. Plaintiff continues to state that Title II "prohibits a public entity from discriminating against a qualified individual with a disability on account of the individual's disability." *Id.*, ¶¶ 46–54.

### B. Contentions

Defendant Cobb County argues that it cannot be liable to Plaintiff under Title II of the Americans with Disabilities Act because based on the allegations in Plaintiff's complaint, Plaintiff was not denied any service by Officer Fuller. Officer Fuller responded to both Plaintiff's call and the call of the restaurant manager. Defendant Cobb County also contends that none of the allegations in Plaintiff's complaint support a claim that Cobb County discriminated against Plaintiff on the basis of his disability. Based on the facts alleged in the complaint, Officer Fuller informed Plaintiff that because the restaurant was private property and because the manager wanted Plaintiff to leave, Plaintiff would need to leave. Finally, Cobb County avers that Officer Fuller's reporting to the scene, having a conversation with the parties, explaining that a property owner could ask someone to leave are not "services, programs, or activities" under the ADA.

Plaintiff responds that Officer Fuller was aware of the fact that Plaintiff had a service dog and by "condoning" Popeye's discrimination, Cobb County discriminated against Plaintiff itself. Plaintiff further argues that the Eleventh Circuit has previously held that the Americans with Disabilities Act should be broadly read to support its remedial purpose. Plaintiff contends that under a broad reading of the ADA, public entities are prohibited from discriminating against qualified individuals with a disability regardless of the context. Plaintiff argues that Officer Fuller asked him to leave solely because of the presence of his service dog and this was in violation of the ADA.

### II. Discussion

The stated purpose of the Americans with Disabilities Act is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Bircoll v. Miami–Dade County*, 480 F.3d 1072, 1081 (11th Cir.2007) (quoting 42 U.S.C. § 12101(b)(1)). Title II of the Americans with Disabilities Act applies to discrimination in public services. 42 U.S.C.

§§ 12131–12165. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.*, § 12132.[1] For the purposes of this motion, Defendant Cobb County concedes that Plaintiff is a "qualified individual with a disability" and that Cobb County is a "public entity."

In order to state a claim under Title II, a plaintiff must show (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability. *Bircoll,* 480 F.3d at 1083; *Shotz v. Cates,* 256 F.3d 1077, 1079 (11th Cir.2001). The Eleventh Circuit has held that the final clause of Title II—"subjected to discrimination"— "protected qualified individuals with a disability from being 'subjected to discrimination by any such entity,' and is not tied directly to the 'services, programs, or activities' of the public entity." *Bledsoe v. Palm Beach County Soil & Water Conservation District,* 133 F.3d 816, 821–22 (11th Cir.1998). The final clause is a "catch-all phrase that prohibits all discrimination by a public entity, regardless of the context." *Id.* at 822.

Although the Eleventh Circuit has addressed the applicability of Title II in police encounters with individuals suspected of a crime, no Eleventh Circuit case has addressed a situation like that posed in the instant case where a patron in a restaurant asked for assistance from the police when the restaurant owner sought to exclude him on the basis of the presence of a service dog. The Eighth Circuit addressed precisely this situation in *Pona v. Cecil Whittaker's Inc.,* 155 F.3d 1034 (8th Cir.1998). There, an employee of Cecil Whittaker's Pizzeria asked Marilyn Pona to leave the premises because she had a service dog with her. *Id.* at 1036. Pona also contended that the police officers and the City of St. Louis violated her rights under Title II of the ADA because the officers refused to explain to the pizzeria employees that under Missouri statute, Pona had the right to be accompanied by her service dog. *Id.* at 1037. Rather, the officers informed Pona of her civil remedies under the circumstances and asked her to leave. *Id.* Pona contended the officers acted in this manner because the St. Louis Police Department had a policy that prohibited officers from taking actions to enforce the Missouri Statute. *Id.*

The opinion is splintered in that each of the three judges on the panel wrote separately. Judge Morris Sheppard Arnold did not reach the question of whether the officers' actions violated the ADA because he determined the facts in the record did not support an allegation that the St. Louis Police Department had a policy of refusing enforcement of the Missouri statute. *Id.* A second panel member sitting by designation, District Judge Panner concurred in part and concurred in the judgment. *Id.* at 1038–39. Judge Panner determined that a policy of refusing to enforce the statute does not violate the ADA. Judge Panner wrote:

> The policy does not refuse service to persons with disabilities. If a disabled

---

1. A "qualified individual with a disability" is defined as an "individual with a disability who, with or without reasonable modifications … or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

individual calls to report a burglary, stolen car, or loud party, the police handle the call no differently than they would handle a call from any other citizen. What the police do have is a policy of not taking sides in disputes concerning discrimination in public accommodations, preferring to let those matters be handled through civil proceedings. This is not a policy targeted solely at persons with disabilities, but includes all incidents concerning these laws, including race, religion, and gender. There is a civil enforcement mechanism available, and the police advise individuals of their right to initiate such action.

*Id.* at 1039.

Judge Richard S. Arnold, concurring in part and dissenting in part, found that the St. Louis Police Department did have a policy of refusing to enforce civil statutes regarding admission of disabled person to places of public accommodation. *Id.* at 1040. Judge (Richard) Arnold found that "[s]uch a policy, which denies to disabled citizens a state-law right, and withholds from them, in that respect, law-enforcement services available to citizens generally, is inimical to the letter and spirit of federal law." *Id.*

Thus, through Judge Panner (who determined that the police had a policy but that policy did not violate the ADA) and Judge (Morris Sheppard) Arnold (who found there was not sufficient evidence of such a policy), the court held 2–1 in favor of defendants and rejected the plaintiff's position that if an officer informs an individual of his civil remedies under the ADA but declines to assist the complainant in maintaining access to a private business, the police officer has denied the individual the benefits of the city's services, programs, or activities. *Id.* at 1036–37. *See also Valder v. City of Grand Forks,* 217 F.R.D. 491 (D.N.D.2003) (applying *Pona* and holding that plaintiff's claim that police officer's response that he could do nothing to assist him when homeless shelter denied him admission because of his service dog is not sufficient to state claim under Title II).

■ The court assumes for the purposes of this motion that Officer Fuller's response to the scene, conversation with the parties, and conveying to Plaintiff that the restaurant was private property and the manager could ask Plaintiff to leave, are "services, programs, or activities" under the ADA. The court recognizes that in the context of police response, some circuits have attempted to draw a line that an officer's initial response to a scene does not fit into the category of "services, programs, or activities." *See, e.g., Hainze v. Richards,* 207 F.3d 795, 801 (5th Cir.2000) (holding that "Title II does apply to an officer's on-the-street response to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life"). The court finds it need not reach this question in this case.

Rather, the court focuses on whether Plaintiff has alleged sufficient facts to show that the exclusion, denial of benefit, or discrimination was by reason of Plaintiff's disability. The court finds that Plaintiff has not. Based on the facts alleged in the complaint, Officer Fuller responded to the scene and listened to the position of both sides. The restaurant manager informed Officer Fuller that she wanted Plaintiff to leave because Plaintiff's service dog was scaring away other patrons. Plaintiff and his mother told Officer Fuller that Plaintiff had the right to be accompanied in the restaurant by his service dog. Officer Fuller determined that the restaurant was private property and the restaurant manager could ask Plaintiff and his

service dog to leave. Officer Fuller, therefore, did provide services to both Plaintiff and the restaurant manager. Plaintiff disagrees with the outcome of those services, but there is no doubt that Officer Fuller responded to the scene and attempted to resolve the conflict. There can be no expectation that the police will always resolve a conflict in one's favor and Plaintiff has alleged no facts which would show that Officer Fuller's determination that the restaurant manager could ask Plaintiff and his service dog to leave the private property was one he reached on the basis of Plaintiff's disability.

If the court were to determine that Plaintiff was denied services based on his disability because Officer Fuller did not convince the restaurant manager that Plaintiff and his service dog could remain in the restaurant, the police would become responsible for sorting out civil liabilities. While one might argue that whether a service dog is permitted in a restaurant is a fairly straight-forward question (and one that the court will need to address with respect to Popeye's liability in this civil action), another patron might challenge the degree of slope of a handicapped ramp into the restaurant, a much more difficult question to resolve on the scene. There can be no expectation that police officers are equipped to address that type of situation when responding to a disturbance call. County police officers are not civil lawyers. Plaintiff has not alleged that the officer violated his constitutional rights. Most significantly, Plaintiff is not left without a remedy; he has sued Popeye's Restaurant to enforce his rights under the Americans with Disabilities Act.[2] For these reasons, the court finds that Defendant Cobb County as a matter of law cannot be liable to Plaintiff under Title II of the Americans with Disabilities Act based on the facts as alleged in Plaintiff's complaint.

### III. Conclusion

The court GRANTS Defendant Cobb County's motion to dismiss [15].

**IT IS SO ORDERED.**

---

2. Plaintiff also argues that the court should not dismiss his complaint at this stage, but rather allow him to proceed to discovery to more fully develop the facts related to Cobb County's liability. The court disagrees.

Whether Cobb County is liable under these circumstances is a question of law based on the facts as alleged by Plaintiff who was present throughout the encounter.